**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSVYLANIA**

| | | |
|---|---|---|
| CARMEN DIXON-ROLLINS | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-646 |
| | ) | |
| v. | ) | |
| | ) | |
| EXPERIAN INFO. SOLUTIONS, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFF CARMEN DIXON-ROLLINS'S MEMORANDUM OF LAW IN SUPPORT
OF HER RESPONSE IN OPPOSITION TO DEFENDANT TRANS UNION, LLC'S AND
DEFENDANT ASSOCIATED CREDIT AND COLLECTION BUREAU, INC.'S
MOTIONS FOR SUMMARY JUDGMENT**
_____

**FRANCIS & MAILMAN, P.C.**
JOHN SOUMILAS
GEOFFREY H. BASKERVILLE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

i

## TABLE OF CONTENTS

I.   BACKGROUND ...................................................................................................2

II.  STANDARD ......................................................................................................6

III. ARGUMENT .....................................................................................................7

    A.  TU's Motion For Partial Summary Judgment Fails.......................................7

        1.  TU's Challenges of Plaintiff's FCRA Section 1681e(b) Claim Fail
            Because Plaintiff Has Come Forward With Evidence To Show A
            Genuine Issue Of Material Fact On The Subjects Of Causation And
            Damages.......................................................................................................8

        2.  TU Fails To Make Any Proper Argument Against Plaintiff's
            Defamation And Invasion Of Privacy Claims ...................................14

        3.  Plaintiff Withdraws Her Pennsylvania CPL Claim .........................16

    B.  ACCB's Motion For Summary Judgment Fails ..........................................16

        1.  Plaintiff Has Brought Timely Claims Against ACCB .....................16

        2.  Plaintiff Has Come Forward With Evidence Of Multiple FDCPA
            Sections 1692e and 1692f Violations, And Those Claims, As Well
            As The Related FCEUA Claims, Must Go To The Jury..................19

            a.  Plaintiff Can Establish Her FDCPA And FCEUA Claims
                Notwithstanding ACCB's State Of Mind, Which Was, In Any
                Event, That Of A Defendant That Minimally "Should Have
                Known" That It Was Violating The Law...................................21

            b.  ACCB Has No Bona Fide Error Defense In This Case, And
                Cannot Obtain Summary Judgment Even If It Had Such A
                Defense ...................................................................................24

        3.  Plaintiff Has Withdrawn Her Claim Under FCRA Section 1681q .................26

        4.  ACCB Failed To Conduct Reasonable Investigations Into Plaintiff's
            Repeated Disputes, In Violation Of FCRA Section 1681s-2(b).......................26

            a.  Plain Text Reading Of FCRA Section 1681s-2(b)..................................27

            b.  Case Law Interpreting FCRA Section 1681s-2(b)...................................28

c.  Application To Facts ...................................................................29

5.  ACCB's Conduct Here May Be Deemed By A Reasonable Jury To
Constitute One Or More Willful Violations Of The FCRA ...........32

a.  The Legal Standard: Reckless Or Conscious Disregard ........................32

b.  Safeco Affirmed The Reckless Disregard Standard ...............................34

c.  Plaintiff Has Come Forward With A Factual Record That
Would Easily Permit A Reasonable Jury To Find That ACCB's
Violations Of The FCRA In This Case Were Willful............................36

6.  Because ACCB's Conduct Was Willful, Plaintiff's Common Law
Claims Are Not "Preempted" By FCRA Section 1681h(e) ............................37

IV.   **CONCLUSION** ...............................................................................................39

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARMEN DIXON-ROLLINS** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 09-646** |
| **vs.** ) | |
| ) | |
| **EXPERIAN INFO. SOLUTIONS, INC., et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**PLAINTIFF CARMEN DIXON-ROLLINS' MEMORANDUM OF LAW
IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DEFENDANT
TRANS UNION, LLC'S AND DEFENDANT ASSOCIATED CREDIT AND
COLLECTION BUREAU, INC.'S MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Carmen Dixon-Rollins hereby respectfully responds in opposition to the motions for summary judgment filed by two of the Defendants in this matter -- Trans Union, LLC ("TU") (Docket No. 41), a national consumer credit reporting agency or "CRA," and Associated Credit and Collection Bureau, Inc. ("ACCB") (Docket No. 38), a national debt collector and furnisher of credit information (collectively, "Defendants").

These Defendants damaged Plaintiff's good name and credit by repeatedly confirming and allegedly "verifying" for years that Plaintiff owed $690 to an old landlord in the form of an alleged collection account. That information was inaccurate and false. Defendants could have easily corrected their records. They were unwilling to do so until after Plaintiff sued. Defendants could have just as easily complied with the law by blocking or deleting this false collection account if they did not feel like doing an honest investigation that got to the truth. Again, they were unwilling to do so until after Plaintiff sued.

Now they argue that Plaintiff purportedly has no claim against them despite their statutory and common law duties to report only accurate and true information in the first place

1

and to promptly correct any inaccuracies upon notice.   Because the record in this case shows that Plaintiff brought valid claims and that genuine issues of material fact exist for the jury, and also because TU and ACCB are not entitled to judgment as a matter of law, Defendants' motions should be denied.

## I.   <u>BACKGROUND</u>

The factual record relevant to the instant motions is set forth not in Defendants' factual statements, but in Plaintiffs' Counter-Statements of Facts, which was filed separately at the same time as this memorandum, and which is incorporated by reference herein.[1]

In summary fashion, the record in this case shows that Plaintiff Carmen Dixon-Rollins owes no money to her old landlord, Awbury Park Apartments.  (PCSF at ¶ C1).  Plaintiff, a Philadelphia police officer, was sued by Awbury Park Apartments in 2004 for $1,163 supposedly for certain unpaid charges and penalties or for alleged damage to an apartment that she rented. (PCSF at ¶ C2).[2]   Nevertheless, Plaintiff defended the underlying lawsuit and in October 2004 settled all claims with the landlord for $530.  (PCSF at ¶ C3).  The settlement was memorialized by counsel in that case in letters, Plaintiff paid by money order in the amount of $531, which cleared, and Plaintiff believed that the unfortunate landlord dispute was behind her.  (PCSF at ¶ C3-C7).

But the landlord's rent collector and property management company, Defendant Chancellor Properties, Inc. ("Chancellor"), nevertheless placed the alleged "debt" for collections

---

[1]     References to Plaintiff's Counter Statement of Facts are cited as (PCSF at ¶¶ __) herein.

[2]     The parties' accounts of what actually led to the underlying dispute with the landlord are highly contested, and no Defendant in this case has offered any coherent or creditable evidence showing that Plaintiff *ever* actually owed any money to the landlord.  (PCSF at ¶ C2).

with ACCB, for no appropriate reason and in violation of its own operating rules.[3]  (PCSF at ¶ C8).  ACCB attempted to re-collect the already paid debt and also reported it to the CRAs on Plaintiff's credit reports as a highly derogatory unpaid "collection" with a "$690 balance." (PCSF at ¶ C9).  Plaintiff discovered the obvious error and disputed it in early 2005.  (PCSF at ¶ C10).

The record in this case shows that in 2005, 2006, 2007, 2008 and 2009 Plaintiff disputed and re-disputed this collection account repeatedly with ACCB, TU, other CRAs, Chancellor and even with the Better Business Bureau.  (PCSF at ¶ C11).  None would help her to correct the obvious and harmful error, which continued to report against her until shortly *after* Plaintiff brought this lawsuit.  (PCSF at ¶ C53).

The Defendants filing the present motions received notice of this dispute a total of nineteen (19) times.  According to Defendants' own records, notice was received four (4) times by TU (on or about 5/8/07, 12/12/07, 5/23/08, and 7/28/08) and fifteen (15) times by ACCB (on or about 2/28/05, 3/21/05, 3/31/05, 4/18/05, 5/16/05, 5/24/05, 5/31/05, 8/22/06, 5/14/07, 5/21/07, 11/8/07, 1/8/08, 1/10/08, 6/23/08 and 4/7/09).  (PCSF at ¶ C32, and preceding summary of disputes).

Plaintiff even had her former attorney contact an ACCB debt collector, who responded that "the letter from your attorney means nothing to me."  (PCSF at ¶¶ C33 & C35).  ACCB and TU repeatedly "verified" the collections account as accurate, with Plaintiff allegedly still owing "$690."  (PCSF at ¶ C36).  Defendants did nothing to correct the problem until May 2009 despite their statutory duties to report only "accurate" information, to carefully "investigate" consumer

---

[3]     Chancellor's Rule 30(b)(6) witness testified in this case that no "debt" should have been placed with ACCB until Chancellor assisted the landlord to obtain a "judgment" against any given tenant.  (PCSF at ¶ C8).  No judgment was ever obtained against Plaintiff.   (PCSF at ¶ C8).

disputes, and to promptly delete any debt that cannot be "verified" by them as true and accurate. (PCSF at ¶ C53).

Defendants admit that they simply parroted the inaccurate records that led to the error in the first place.  (PCSF at ¶ C37).  Neither TU nor ACCB contacted Plaintiff or her husband for any information; neither contacted the attorneys involved in the underlying landlord dispute or any third party, such as the court; and neither searched for the money order or any record of payment.  (PCSF at ¶ C38).  Indeed, Defendants "investigated" the repeated credit disputes by *not* interviewing or speaking with *a single* person, and by *not* unearthing or even searching for *a single* document.  (PCSF at ¶¶ C38-C51).  Even when Plaintiff provided proof of the payment to them and relevant contact information for all parties and counsel involved in the landlord dispute, these Defendants ignored it.   (PCSF at ¶ C52).  Defense records show that they intended to continue to report this highly derogatory collection item for seven (7) years.  (PCSF at ¶ C54).

For the two years prior to filing this lawsuit (the statute of limitations period for most claims), Plaintiff's credit had only one "adverse" or "derogatory" account -- the collection item that is the subject of this lawsuit.  (PCSF at ¶ C55).  The account was sometimes double-reporting as both a Chancellor account and an ACCB collection account.  (PCSF at ¶ C56).  The ACCB account always reported in derogatory status and with a balance of $690.   (PCSF at ¶ C57).

When Plaintiff needed credit, she was denied, delayed or offered exceedingly high interest rates.  (PCSF at ¶ C58).  For the two years prior to filing this lawsuit, Plaintiff has presented evidence that she was denied a personal loan to replace her leaky windows through Wells Fargo on 11/24/08; was offer only an unaffordable 12.9% interest rate from FCC Financing for the same transaction on 12/1/08; was denied credit by Capital One on 11/20/08;

4

had to accept a 23% interest loan through CitiFinancial on 8/14/07; and was charged a .5% higher interest rate on her present mortgage by Gateway Funding in the early part of 2009 due to this single supposedly unpaid blemish on her credit record.  (PCSF at ¶ C59).  All of these adverse credit actions were taken because of TU credit reports sold to the various potential creditors (including Wells Fargo, CitiFinancial, FCC Financing, Capital One, and Gateway Funding), with the ACCB account reporting as the only derogatory credit item in Plaintiff's credit report.  (PCSF at ¶ C60).

The Gateway Funding branch manager who personally processed Plaintiff's loan testified that Plaintiff's poor credit score disqualified her from competitive "conventional" mortgages, and even though he was able to offer Plaintiff an FHA home loan, that loan was .5% more expensive than it otherwise would have been *because* the ACCB collection account reflected an unpaid balance of $690.   (PCSF at ¶ C61).

Plaintiff has further offered an unrebutted expert report that her credit losses were caused by this inaccurate collection item, that the inaccurate collection item prevented Plaintiff from obtaining a mortgage loan that could have been .75% to .9% lower than the loan Gateway Funding was able to give her, and further that Plaintiff's financial losses as to the mortgage alone are in the range of $46,700 to $58,500.   (PCSF at ¶ C62); (*See also* Norton Expert Report, attached hereto as Exhibit 49).

Plaintiff also offers detailed evidence and seeks damages for the other lost credit opportunities (such as with Wells Fargo, FFC Financial, Capital One,  and Citibank) and for the untold frustration, embarrassment, and related emotional distress that she suffered at the hands of these Defendants for a prolonged period of time.  (PCSF at ¶ C63).  Further, as she wrote in some of her dispute letters through the years, this false reporting has negatively affected her

"credibility and character" and has been "truly embarrassing and unfair."   (PCSF at ¶ C65).

Plaintiff also offers evidence of frustration, embarrassment, and other emotional distress.   (PCSF

at ¶ C58, C65-C67).   After she repeatedly hit a "brick wall" (PCSF at ¶ C68), Plaintiff brought

this lawsuit, in which she seeks statutory, actual, treble, and punitive damages, as well as her

attorney's fees and costs.

TU and ACCB have now removed any traces of this supposed unpaid "collection" item.

Nevertheless, they move for summary judgment, arguing that they were reasonable in their

actions all along.   They contend that Plaintiff cannot prove any of her common law or statutory

consumer protection claims.   As will be set forth below, Defendants distort the factual record in

this case and misapply the legal standards.   If anyone is entitled to judgment as a matter of law in

this case, it is Plaintiff.   Defendants' motions for summary judgment should be denied.

## II.   <u>STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a motion for summary judgment

will only be granted if:

> The pleadings, the discovery and disclosure material on file, and
> any affidavits show that there is no genuine issue as to any material
> fact and that the movant is entitled to a judgment as a matter of
> law.

Fed. R. Civ. P. 56(c)(2) (revised as of Dec. 1, 2009).   The Third Circuit has said that summary

judgment may only be granted if the movant shows, by admissible evidence, that there exists no

genuine issue of material fact that would permit a reasonable jury to find for the nonmoving

party.   *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998); *Miller v. Indiana Hosp.*, 843 F.2d

139, 143 (3d Cir. 1988), *cert. denied*, 488 U.S. 870 (1988).

A court may not, at the summary judgment stage, weigh evidence or make credibility

decisions.   These tasks are left to the fact-finder.   *Petruzzi's IGA Supermarkets, Inc. v. Darling-*

*Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993), *cert. denied*, 510 U.S. 994 (1993).  To raise a genuine issue of material fact, the respondent need not match, item-for-item each piece of evidence proffered by the movant.  As the Third Circuit has explained:

> In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quality of the movant's evidence far outweighs that of its opponent.  It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*In re Unisys Savings Plan Litigation*, 74 F.3d 420, 433 n. 10 (3d Cir. 1996).  If there are gaps in the pertinent materials submitted by the movant, without explanation, that justifies denial of the motion.  *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989).

In the case at bar, there exist genuine issues of material fact and Defendants are not entitled to judgment as a matter of law.  Summary judgment, therefore, is inappropriate.

## III.   ARGUMENT

Plaintiff explains below why the defense arguments in support of TU and ACCB's motions for summary judgment fail, beginning with TU's arguments.

### A.   TU's Motion For Partial Summary Judgment Fails

It should first be noted that TU moves for <u>partial</u> summary judgment.  TU never cites, discusses or addresses at all in its motion Plaintiff's claims that: (1) TU failed to reasonably reinvestigate her disputes (under FCRA section 1681i); and (2) TU willful violated the FCRA (under FCRA section 1681n).  Plaintiff pled these FCRA claims at paragraph 34 of her Amended Complaint.  (Docket No. 21).  TU knows these FCRA claims well, as they are brought regularly against it, and has on other occasions moved for summary judgment on those very same claims, without success.  In this case, TU does not move on those claims.

TU also does not move for summary judgment on Plaintiff's common law negligence claim.  In the heading of section II.E of its brief, TU says that Plaintiff's defamation, invasion of privacy and common law negligence claims are "meritless," but nowhere in that section *or in any other part of its brief* does TU make any argument or cite any authority whatsoever for why Plaintiff cannot proceed to the jury with her common law negligence claim.  Because TU fails to move or brief the negligence claim, or discuss it in any meaningful way, that claim is also not a part of TU's partial motion for summary judgment.  *See* Local Civ. R. 7.1(c) (requiring statement of legal contentions and authorities).

Thus, TU's motion is one for partial summary judgment, and Plaintiff's FCRA section 1681i and 1681n claims, as well as her common law negligence claim, remain uncontested and must proceed to the jury.

**1.      TU's Challenges Of Plaintiff's FCRA Section 1681e(b) Claim Fail Because Plaintiff Has Come Forward With Evidence To Show A Genuine Issue Of Material Fact On The Subjects Of Causation And Damages**

The one FCRA claim that TU actually briefs in its motion is Plaintiff's FCRA section 1681e(b) claim, which requires CRAs, such as TU, to prepare consumer (or credit) reports following procedures that assure "maximum possible accuracy."  *See* 15 U.S.C. § 1681e(b).  TU argues that Plaintiff cannot establish a section 1681e(b) claim allegedly because she cannot show that any action by TU "caused her harm," either in the form of emotional distress or in the form of credit denials or lost credit opportunities.  (TU Mem. at 3-9).  These are arguments that TU has tried and tried again in this Circuit, never with success.  Again, these arguments must be rejected in this case.[4]

---

[4]      TU has lost the virtually identical argument in the following cases: *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 & n.3 (3d Cir. 1996); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Pack-Anderson v. Trans Union, LLC*, E.D. Pa. Civ. No. 05-

The Third Circuit has held that for an FCRA section 1681e(b) negligence claim (although not a willfulness claim) a consumer must make a *prima facie* showing that the credit reporting inaccuracy caused actual damages. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).  Here, Plaintiff has alleged that TU violated FCRA section 1681e(b) negligently and/or willfully. (*See* Amed. Comp. at ¶¶ 30-35, esp. ¶ 34) (Docket No. 21).  Since Plaintiff will show in this case that TU's FCRA violations were willful (a claim that TU's motion has not even challenged), she does not have the burden of showing any actual damages at summary judgment or at trial.  However, since under either a negligence or willfulness theory Plaintiff may recover, and in this case will seek, actual damages, she has come forward with more than sufficient evidence of the type of harm which constitutes "actual damages" under the FCRA.

Notably, emotional and mental distress, anxiety, frustration, anger, humiliation, and embarrassment as well as damage to credit reputation are all recognized as "actual damages" under the FCRA.  *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 & n.3 (3d Cir. 1996); *see also Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir. 1976); *see generally Cushman v. Trans Union Corp.,* 115 F. 3d 220 (3d Cir. 1997); *Lukens v. Dunphy Nissan, Inc.*, Civ. No. 03-767, 2004 WL 1661220 at * 5 (E.D. Pa. Jul. 26, 2004) (FCRA plaintiff may recover for having to place fraud alert on his credit report and for time in dealing with and attempting to clear up credit inaccuracies); *Lawrence v.*

---

5683 at Docket Nos. 15 and 21; *Baksh v. Trans Union, LLC*, E.D. Pa. Civ. No.  04-1088 at Docket Nos. 46 and 62: *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582, 588-89 (E.D. Pa. 2003); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 319 (E.D. Pa. 2003); *Evantash v. G.E. Capital Mortgage Servs., Inc. and Trans Union,* Civ. No. 02-1188, 2003 WL 22844198 at *5 (E.D. Pa. Nov. 25, 2003); *Sheffer v. Experian Info. Solutions*, Inc. *and Trans Union, Civ*., No. 02-7407, 2003 WL 21710573 at * 3-4 (E.D. Pa. July 24, 2003).

*Trans Union, LLC*, 296 F. Supp. 2d. at 588-89; *Evantash v. G.E. Capital Mortgage Servs., Inc.*, E.D. Pa. Civ. No. 02-1188, 2003 WL 22844198 * 5; *Crane v. Trans Union, LLC* 282 F. Supp. 2d at 319-321; *Sheffer v. Experian Info. Solutions, Inc.*, E.D. Pa. Civ. No. 02-7407, 2003 WL 21710573 at * 3-4. Indeed, most of the above decisions were against TU itself in FCRA cases. These cases also demonstrate that a consumer-plaintiff may recover such damages without the need for medical testimony. *Id.*[5]

The Third Circuit has explained that in an FCRA case a plaintiff need not come forward with a mountain of evidence in order to proceed to the jury with his or her damages claim. In *Philbin*, the Third Circuit found the following interrogatory response to be sufficient for the plaintiff to survive summary judgment:

> Plaintiff cannot with specificity outline the actual damages sustained. However, he sustained damages over the past (4) four to (5) five years as a result of the persistent and continual rejections from credit agencies as a result of the false information contained in his credit report. Plus the humiliation and embarrassment following the rejection with the particular vendor whom [sic] he sought credit.

---

[5]  Due to the importance of one's credit reputation in today's electronic age, juries from around the country have recognized the significance of non-economic damages in FCRA cases and have awarded consumers significant amounts of compensation. *See Cortez v. Trans Union*, E.D. Pa. Civ. No. 05-5684 (Docket No. 44) ($50,000 for emotion distress with no proof of economic harm); *Boris v. Choicepoint Services, Inc.*, 249 F. Supp. 2d 851, 2003 WL 1255891 (W.D. Ky. 2003) ($100,000 for humiliation, emotional distress and embarrassment)*; Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury award of $5.3 million remitted to $1 million; $300,000 in compensatory damages for emotional distress damages)*; see also Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001) (damages for loss of reputation are available under FCRA); *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982) (actual damages recoverable for humiliation and mental distress even when no out-of-pocket expenses existed). Thus, even though Plaintiff claims that the horrendously inaccurate derogatory data TU has reported about her interfered with her ability to obtain credit, there exists no burden for Plaintiff to show credit denials or other economic damage in order for her to be able to prove actual damages under the FCRA. TU ignores most of this FCRA precedent and instead cites employment law decisions and cases from other Circuits. (*See* TU Mem. at 8).

*Philbin*, 101 F.3d at 963 n. 3; *see also Crane v. Trans Union, LLC* 282 F. Supp. 2d at 319 (summary judgment denied on similar evidence).

"The loss of credit opportunities [also] constitutes compensable harm under the FCRA." *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d. at 588-89 (citing *Philbin*, 101 F.3d at 957); *Guimond*, 45 F.3d at 1333; *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 2005 WL 2009272, *7 (6th Cir. Aug. 22, 2005) (FCRA plaintiff offered testimony of lost credit opportunities in the form of second mortgage and credit card); *see also Rothery v. Trans Union*, Civ. No. 04-312-ST, 2006 WL 1720498 (D. Or. Apr. 6, 2006) (denying TU motion for summary judgment as to lack of damages where consumer-plaintiff has offered her subjective account and declaration from her mother as to loss of credit opportunities); *O'Brien v. Equifax*, 382 F. Supp. 2d 733, 734-35 (E.D. Pa. 2005) (lost opportunity to refinance mortgage basis of FCRA claim).

The standard to prove credit damages or lost credit opportunities is not high for consumer-plaintiffs. A seminal case on credit harm causation comes from our Circuit, *Philbin v. Trans Union*, which held it is a jury issue whether a credit reporting inaccuracy was a "substantial factor" in a lost credit opportunity and that a consumer-plaintiff is minimally required to present some evidence of a credit inaccuracy and then some evidence of applying for and not obtaining credit. *See* 101 F.3d 957, 966-70.[6] In *Philbin*, the consumer sometimes offered "no reason for the denial of credit." *Id.* at 968 (as to Household). Nevertheless, the

---

[6] The consumer in *Philbin* presented evidence of credit denials with the aid of "adverse action" letters that financial institutions had mailed to him after declining his credit applications. Companies are required by law to provide to consumers such adverse action letters pursuant to the FCRA (15 U.S.C. § 1681m) and the Equal Credit Opportunity Act (15 U.S.C. § 1691(d)). *See Koropulos v. Credit Bureau, Inc.*, 734 F.2d 37, 46 n.15 (D.C. Cir. 1995) (in context of discussing admissibility of FCRA adverse action letter citing *United States v. Veytia-Bravo*, 630 F.2d 1187, 1188 (5th Cir. 1979) that "records required by law are admissible as routine business records under Fed. R. Evid. 803(6), *cert denied*, 444 U.S. 1024, 100 S. Ct. 686, 62 L. Ed.2d 658 (1980)").

Third Circuit found that it was for the trier of fact to decide whether the denial was *caused* by TU's inaccurate credit reports by necessary implication, not a legal determination that could be made at summary judgment. *Id.* The consumer in *Philbin* was even allowed to present evidence that he was turned down for credit for reasons other than the inaccurate tax lien on his credit report -- such as "insufficient credit file," "sufficient pay history not established," "limited credit experience" and "high utilization on bankcard credit lines" (as set forth in adverse action letters that he received from lenders) -- because, as the Third Circuit found, "a trier of fact could reasonably <u>infer</u> that the inaccurate adverse information included on the inaccurate credit report was an <u>additional, unstated reason for the credit denials</u>." *Id.* at 969 (emphasis added).

Other Circuit Courts have also held that credit harm stemming from inaccurate credit reporting may be established without anything close to pinpoint causal precision. In *Bach v. First Union National Bank*, for example, the Sixth Circuit upheld $400,000 in actual damages for a consumer based upon the consumer's own testimony and documents that she was denied a mortgage loan and a credit card due to inaccurate credit reporting of a fraudulently-opened credit card account. *See* 149 Fed. Appx. 354, 360, 2005 WL 2009272, *6 (6th Cir. 2005).[7] The defendant in *Bach* argued that the consumer's own testimony that she was denied a second mortgage application was insufficient especially in light of evidence that the consumer had "low income," that the mortgage application was only subject to a "condition" that she own her own condominium as collateral, and that the consumer was simply denied outright, but only denied the loan "on the terms she sought." *Id.* The Sixth Circuit rejected all of these arguments and held that the consumer had come forward with sufficient evidence of a mortgage loan denial to

---

[7]      The *Bach* court held that under the FCRA "in order to recover actual damages, a plaintiff must show that the violation of the statute caused the loss of credit or some other harm" and that there should be some evidence of a "causal link" between the two. *Id.*

support her damages.  *Id.*  With respect to the credit card denial, the defendant argued that the inaccurate credit information had already been "deleted" when the consumer was denied the credit card, and the consumer simply produced an adverse action letter stating that she was denied a credit card from Bank One "due to 'credit accounts now delinquent[,] number of accounts ever delinquent[, and] total available revolving credit.'"  *Id.*  Again, the Sixth Circuit held that, viewed in the light most favorable to the plaintiff, the general reasons stated in the Bank One adverse action letter were "sufficient evidence" to show a "causal link" to the actual damages verdict.  *Id.*

In the case at bar Plaintiff has come forward with more than enough evidence of FCRA actual damages caused by TU, both in the form of emotional distress and in the form or credit denials or lost credit opportunities.  Accordingly TU's arguments at section II.B, C & D of its brief should be rejected.

As set forth above, due to TU's conduct Plaintiff: had her otherwise very good credit damaged (PCSF at ¶¶ A6, C54, C57-C61); had her good name, character and reputation harmed by essentially being labeled as a deadbeat on her credit reports (PCSF at ¶¶ A15, C63-C66); felt frustrated, embarrassed and stressed over the fact that TU repeatedly refused to correct the collection account error for years (PCSF at ¶¶ C36, C53-C54); had headaches (PCSF at ¶ A15); found Defendant's refusal to help her "truly embarrassing and unfair" and "frustrating and degrading."  (PCSF at ¶¶ C64 & C65).

On the credit damage front, Plaintiff: was unable to obtain a loan from Wells Fargo to fix her leaky windows (PCSF at ¶ C59); was offered only an unaffordable 12.9% APR loan from FCC Financing (PCSF at ¶ C59); was denied a loan by Capital One (PCSF at ¶ C59); received only an elevated interest rate of 23% from CitiFinancial (PCSF at ¶ C59); was unable to obtain

the best interest rate when she sought to refinance her mortgage and was charged an extra .5% interest rate by Gateway Funding specifically because of the inaccurate $690 collection account (PCSF at ¶ C61); could have saved even more money on her mortgage refinance, as much as .75% or .9% according to banking expert Thomas J. Norton, stemming to a financial loss in the range of $46,700 - $58,500 (PCSF at ¶ C62).   All of these emotional distress and credit losses stemmed from TU credit reports prepared and published in the two years prior to this lawsuit.

TU is further mistaken in arguing that Plaintiff here should have some higher undefined burden of proving credit harm because she has "accurate, derogatory credit."  (*See* TU Mem. at 6).  That is simply not true.  Although Plaintiff did have some high credit card balances, TU's own credit reports show that the ACCB $690 collection is the *only* account that TU itself identified on the credit report as an "Adverse Account"; *all* of Plaintiff's other accounts, including the credit cards, are listed under the heading "Satisfactory Accounts." (PCSF at ¶ C55). TU's Rule 30(b)(6) witness also agreed that for the two years prior to this lawsuits the ACCB account was the only derogatory account on Plaintiff's credit report, and TU's records show that it sold Plaintiff's report to multiple creditors and potential creditors.  (PCSF at ¶ C55).  The Gateway Funding mortgage lender, Jarred Nelson, also agrees that the collection account at issue in this lawsuit is the only derogatory credit item.  (PCSF at ¶ C55).

Given the clear case law regarding the recovery of non-economic damages under the FCRA, as well as the causal standard for credit harm and lost credit opportunities, Plaintiff's evidence of actual damages is more than sufficient.  TU's Motion must therefore be denied.

### 2.    TU Fails To Make Any Proper Argument Against Plaintiff's Defamation And Invasion Of Privacy Claims

TU next challenges Plaintiff's common law claims of defamation and invasion of privacy.  (TU Mem. at 9).  As discussed above, TU ignores and does not move on Plaintiff's

14

common law negligence claim, although it does include the word negligence in the heading of section II.E.  TU's argument fails.

First, TU says that Plaintiff cannot proceed with her common law defamation claim allegedly because she cannot show "special harm," such as monetary damages or actual loss, under 42 Pa. C.S. § 8343.   (TU Mem. at 9).  As discussed above under the FCRA section 1681e(b) claim, Plaintiff here has come forward with detailed testimony and supporting documents that, because of TU credit reports, she was denied credit or was offered only adverse rates and terms by Wells Fargo, CitiFinancial, FCC Financing, Capital One and Gateway Funding.  Her unrebutted expert report calculates her monetary losses in the range of $46,700-$58,500.  She can clearly establish the element of special harm.  To the extent that TU disagrees with that evidence, that disagreement only creates a genuine issue of material fact that cannot be decided at summary judgment and that must instead go to the jury.

Next, TU challenges Plaintiff's common law invasion of privacy claim on the theory that "publication" of the false collection account information to "two potential creditors is not a publication to the public at large as to give rise to a cause of action for invasion of privacy/false light." (TU Mem. at 10).  TU is factually mistaken.  First, the record shows that Plaintiff can show *credit harm* stemming from at least 5 publications by TU -- to Wells Fargo, CitiFinancial, FCC Financing, Capital One and Gateway Funding.   Moreover, TU's own documents show that TU published Plaintiff's credit information to many more of her existing and potential creditors, casting her in a false light regardless of whether Plaintiff can show that those additional publications also led to credit or economic harm, as opposed to only reputational harm.

For example, Plaintiff's TU credit report dated January 16, 2009 -- which still reflected the inaccurate $690 ACCB collection account -- shows that TU sold Plaintiff's credit

information for "promotional purposes" over 30 times (to companies that may have wanted to make a credit offer to Plaintiff) and also permitted another 33 "account review inquiries." (*See* 1/26/09 TU Credit Report at pp. 4-8); (PCSF at ¶ C64).   Again, this is a situation where the parties seemingly cannot agree on the facts, which makes summary judgment inappropriate.[8]

For these reasons, TU's motion for summary judgment as to Plaintiff's common law defamation and invasion of privacy claims should also be denied.

### 3.      Plaintiff Withdraws Her Pennsylvania CPL Claim

Plaintiff does not contest TU's motion with respect to the Pennsylvania Unfair Trade Practices and Consumer Protection Law claim, 73 Pa. C.S. §§ 201-1 to 201-9.3 (commonly referred to as the "CPL" in consumer cases).   Plaintiff proposed a stipulation to TU's counsel to dismiss and/or withdraw that claim, but TU's counsel did not answer affirmatively or negatively whether it agreed to such a dismissal.

### B.      ACCB's Motion For Summary Judgment Fails

### 1.      Plaintiff Has Brought Timely Claims Against ACCB

Plaintiff first addresses ACCB's contentions (at sections III.A & B of ACCB's memorandum) that Plaintiff's statutory claims are barred by the applicable statutes of limitations.  (ACCB Mem. at 9-10).  Plaintiff filed this suit on February 16, 2009. (*See* Docket No. 1).  Although ACCB had violated Plaintiff's rights for years, it continued to engage in *separate and additional violations* of the FDCPA and FCEUA in 2008 and into 2009, well

---

[8]      Although Pennsylvania courts have not had the occasion to flesh out the invasion of privacy "publication" element in fair credit reporting cases, this Court may wish to take note that a federal District Court in New Jersey has recently held that under the laws of several states an invasion of privacy/false light claim stemming from inaccurate credit reporting may be sustained where the false publication was made upon a credit report, which can have wide dissemination and adverse consequences in the lending and credit world.  *See Knechtel v. Choicepoint, Inc.*, slip copy, 2009 WL 4123275 (D.N.J.  Nov. 23, 2009); *Carlton v. Choicepoint, Inc.*, slip copy, 2009 WL 4127546  (D.N.J., Nov. 23, 2009).

within the applicable limitation periods.   These violations relate to ACCB's false credit reporting and supposed credit "verifications" of the debt.   Credit reporting is a form of debt collection, as both the president of ACCB and the courts acknowledge.   (*See* Exhibit 5, Dreher Dep. at 76:15-79:18).   *See Sullivan v. Equifax, Inc.*, 2002 WL 799856, *4 (E.D. Pa. Apr. 19, 2002) (credit reporting is debt collection activity).   Thus, Plaintiff's claims as to ACCB, which relate to more recent and ongoing credit reporting violations of the debt collection laws in 2008 and 2009, are timely.

ACCB contends that Plaintiff's claims under the FDCPA are time-barred allegedly because the "Defendant's last communication *with Plaintiff* occurred on or about May 16, 2005," outside of the FDCPA's one-year statute of limitations.   (ACCB Mem. at 9-10); *See* 15 U.S.C. § 1692k(d) (an "action to enforce liability" may be brought "within one year from the date *on which the violation occurs*.").   (emphasis added).   The claims that Plaintiff actually brings under the FDCPA sections 1692e and 1692f, however, all occurred within one year of the filing date of this action.   Moreover, none of these claims are predicated upon any direct *communication between Plaintiff and Defendant*.

For example, ACCB, violated FDCPA sections 1692e and 1692f  on June 23, 2008 when it continued to report and "verify" to TU the purported accuracy of the alleged landlord debt. (PCSF at ¶ C36).   ACCB also continued to report the $690 collection into 2009.   (PCSF at ¶¶ C53 & C57).   The ACCB account was not deleted from Plaintiff's TU credit report until May 11, 2009, almost three months *after* she filed this lawsuit.   ACCB also continued to report the $690 collection account to Experian into 2009.   (PCSF at ¶ C53) (processing dispute from Experian on April 7, 2009, since account was still reporting through that time).

These ongoing "violations" could not have occurred in 2005 and they are valid even with no direct "communication" between Plaintiff and Defendant, which is not an element of these violations. It makes no sense, therefore, for Defendant to argue that the statute of limitations expired in May 2006, when the "violations" at issue did not even occur until 2008 and 2009.

The same rationale applies to Plaintiff's claims under the Pennsylvania debt collection statute, the FCEUA, which has a two-year statute of limitations. *See* 73 P.S. § 2270.5(b) (an "action to enforce liability" may be brought "within two years from the date *on which the violation occurs*."). (emphasis added). Because the "violations" covered by the FCEUA occurred within two years of the February 16, 2009 filing of this lawsuit, those claims are timely. In addition to the 2008 and 2009 violations indentified under the FDCPA, *supra*, the record shows additional false credit "verifications" of the disputed collection account on May 14, 2007 and January 8, 2008 to TU, as well as on January 10, 2008 to Experian, which are within two years of the FCEUA statute of limitations. (PCSF at ¶¶ C21, C25, C27).

The fact that ACCB may have also violated Plaintiff's FDCPA and the FCEUA rights in 2005 does not give it a right to separately violate Plaintiff's rights in 2007, 2008 and 2009 with impunity. A debt collector does not get a free pass for all future violations of the law if it happens not be sued by a consumer within one year (two years in Pennsylvania) of when it first violated that consumer's rights. Several federal courts have held that when the unfair debt collection violation is one related to inaccurate or false credit reporting, the statute of limitations begins to run anew from the date of *each* new report or violation. *See Purnell v. Arrow Fin. Servs., LLC,* 303 Fed. Appx. 297, 2008 WL 5235827, *5 (6th Cir. 2008) (where credit reporting FDCPA violations occurred within one year of suit filing, those claims are timely, even though additional similar claims that occurred more than one year prior to the filing are barred by the

statute of limitations); *Sullivan v. Equifax, Inc.*, 2002 WL 799856, *4 (E.D. Pa. Apr. 19, 2002) (where credit reporting violation continued to occur, FDCPA statute of limitations does not expire even when false reporting started well more than one year prior to suit).[9]

Finally, this Court should note that the FDCPA and FCEUA are consumer protection statutes to be liberally construed in favor of the consumer, not debt collectors. Construing the statute of limitations provision in a manner that ACCB suggests would leave consumers without recourse in cases of continuing violations, like this one. It could also allow debt collectors to violate the FDCPA and FCEUA at will where consumers simply did not sue within one year (or two years in Pennsylvania) of the first violation, even where the credit reporting "investigations" and ongoing credit reporting violations did not actually occur until much later. Nothing on the face of the FDCPA, the FCEUA, the case law, or public policy supports ACCB's proposed construction of the statute of limitations.

Accordingly, ACCB's statute of limitations argument must be rejected.

**2.     Plaintiff Has Come Forward With Evidence Of Multiple FDCPA Sections 1692e and 1692f Violations, And Those Claims, As Well As The Related FCEUA Claims, Must Go To The Jury**

Now that Plaintiff has shown that she has brought several timely debt collection statutory claims under the FDCPA and FCEUA, she addresses ACCB's arguments that these claims fail as a matter of law. This part of ACCB's motion (section VII) also lacks merit. (*See* ACCB Mem. at 18-21).

---

[9]      *See also Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 359-61 (E.D. Pa. 2001) ("each transmission of the same credit report is a separate and distinct tort to which a new statute of limitation applied"); *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582, 586-87 (E.D. Pa. 2003) (same); *see generally Hyde v. Hibernia*, 861 F.2d 446, 450 (5th Cir. 1988) (same).

The FDCPA was created to prohibit the use of abusive, deceptive and unfair debt collection practices by persons engaged in the debt collection industry. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 2000 WL 1222164, *3 (3d Cir. 2000); *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989). Congress enacted the FDCPA upon the finding that there was abundant evidence of abusive, deceptive and unfair practices by many debt collectors. *Wilson, supra, citing Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 483-84 (4th Cir. 1991) (*quoting* 15 U.S.C. §§ 1692a and 1692e).

Consistent with several other titles of the federal Consumer Credit Protection Act ("CCPA"), the FDCPA establishes a system of enforcement primarily by private attorney's general. *See* 15 U.S.C. § 1692k; *Russey v. Rankin*, 837 F. Supp. 1103, 1105 (D.N.M. 1993); *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). The FDCPA is also similar to other titles of the CCPA in that it is a *strict liability* statute to be liberally construed, requiring no proof of any particular state of mind or actual damages to obtain its statutory remedies. *See Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("Courts have characterized the FDCPA as a strict liability statute"); *Romano v. Williams & Fudge, Inc.*, 644 F. Supp. 2d 653, 557 (W.D. Pa. 2008) ("FDCPA is a strict liability statute and is remedial in nature"); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (same); *see also Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 725 (D. Conn. 1990).

The FDCPA specifically prohibits a long list of false, unfair and deceptive debt collection conduct, including the following, which Plaintiff alleges in this case against ACCB:

- The "false representation or implication" of the "character, amount or legal status of any debt," in violation of FDCPA section 1692e(2)(A);

- "Communicating or threatening to communicate" to any person "credit information which is known or which should be known to be false," in violation of FDCPA section 1692e(8);

- Using "false representations or deceptive means to collect or attempt to collection a debt," in violation of FDCPA section 1692e(10); and

- Using any "unfair or unconscionable means to collect or attempt to collect any debt," in violation of FDCPA section 1692f.

As Defendant notes, Plaintiff's claims under the FCEUA mirror those under the FDCPA. (ACCB Mem. at 18). Indeed, the FCEUA expressly provides that "[i]t shall constitute an unfair or deceptive debt collection practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a). The only difference is that the FCEUA has a two-year statute of limitations, one year longer than the FDCPA. *See* 73 P.S. § 2270.5(b).

ACCB argues that it did not violate any of these provisions, under either federal or state law, purportedly because of two basic reasons: (1) it allegedly never communicated information to the CRAs that it "knew or showed have known" to be false (ACCB Mem. at 19); and (2) it allegedly has a "bona fide error" defense (ACCB Mem. at 19-20). Both of these arguments fail.

   a.   **Plaintiff Can Establish Her FDCPA And FCEUA Claims Notwithstanding ACCB's State Of Mind, Which Was, In Any Event, That Of A Defendant That Minimally "Should Have Known" That It Was Violating The Law**

First, what ACCB knew or should have known is immaterial to all of Plaintiff's debt collection statutory claims, with the exception of her section 1692e(8) claim which expressly uses the phrase "known or which should be known." FDCPA sections 1692e(2)(A), 1693e(10) and 1692f do not say that the defendant must know, or should know, that it is acting in a false, deceptive, unfair or unconscionable way. The FDCPA is generally construed as a strict liability statue. *See Romano v. Williams & Fudge, Inc.*, 644 F. Supp. 2d 653, 557 (W.D. Pa. 2008)

21

("FDCPA is a strict liability statute and is remedial in nature"); *see also Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("Courts have characterized the FDCPA as a strict liability statute"); *Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006) (language of FDCPA is construed broadly so as to effectuate its remedial purpose); *Russell v. Equifax, A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (the FDCPA imposes strict liability).  Thus the defendant's state of mind is usually immaterial.  A collection practice can be false, unfair, deceptive or unconscionable regardless of whether the debt collector intended it to be so.

There could be no doubt in this case that it was "false" for ACCB to report that Plaintiff owed an "amount" of $690 to her old landlord.  A reasonable jury could also find this conduct to be "unfair," "deceptive" or "unconscionable," especially in light of the lengthy dispute history here.  ACCB's conduct need not have been intentional or knowing (or even careless) for Plaintiff to proceed to the jury with her claims under FDCPA sections 1692e(2)(A), 1693e(10) and 1692f, as well as with her mirror claims under the FCEUA.

Moreover, in this case there exists a genuine issue of fact as to what ACCB "knew" or "should have known" about the debt.  The record shows that ACCB was repeatedly put on "notice" of the inaccuracy by Plaintiff, her husband (Maurice), Plaintiff's former attorney (Mathew Lipman), and all three of the CRAs.  ACCB acknowledges receiving notice of an error concerning the collection account 15 times.  (PCSF at ¶ C32).  ACCB was advised that it could also check with the landlord or the landlord's attorney to determine that the debt was paid, and was provided with all of the appropriate contact information.  (PCSF at ¶¶ C16-C17).  Even though ACCB had the burden and the duty of "verifying" whether it was reporting "accurate" information about Plaintiff, it did nothing other than parrot the false data that was provided to it by Chancellor in the first place.  (PCSF at ¶¶ C47-C52).  It did not even demand Chancellor's

records which included a letter from the landlord's lawyer including Plaintiff's payment. Minimally, a reasonable jury could conclude that ACCB "should have known" that the information that it was reporting about Plaintiff was false, and thus violated the FDCPA and FCEUA with respect to all of the claims that Plaintiff brings in this action.[10]

ACCB argues it could simply rely on Chancellor's word that the debt was "due and owing by Plaintiff." (ACCB Mem. at 19-20). But such blind reliance provides no defense in this case. ACCB did not have to report this debt to the CRAs and through the CRAs to all of Plaintiff's existing and prospective creditors. When it did that, it took it upon itself to "verify" that the data that it was disseminating to the lending and credit world was "accurate." It kept on verifying and re-verifying on its own false and harmful information despite some 15 total disputes and clear factual support that the debt was paid via settlement. ACCB has its own statutory duties that it cannot pass off to its client.

---

[10]     ACCB's reliance upon the *Smith* and *Chaudhry* decisions is misplaced. (ACCB Mem. at 19-20) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031-32 (6th Cir. 1992) and *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)). Those cases do not stand for the proposition that a debt collector can blindly parrot the word of its creditor-client regardless of the circumstances and the degree of notice of an inaccuracy. Those decisions are also distinguishable from the case. In *Smith*, the Sixth Circuit held a defendant that "*inadvertently* mailed its second collection letter shortly after receiving Smith's cease and desist letter" that also provided evidence of its collection manuals and procedures made only a bona fide error. *Smith*, 953 F.2d at 1031 (emphasis included). Furthermore, because the same defendant ceased and desisted all collection activities after the inadvertent second collection letter, it did not violate the FDCPA. *Id*. at 1031-32. The facts here are entirely different. The *Chaudhry* case relates to a dispute over whether legal fees billed in connection with collection efforts for a defaulted construction loan were adequately verified. The Fourth Circuit "found no duty for [defendant] to have assembled supporting documentation" when it verified the amount of the fees and sent plaintiffs' counsel a letter encapsulating the same. *Chaudry*, 174 F.3d at 406. Furthermore, the court wrote that "[c]onsistent with the legislative history [for the FDCPA], verification is only intended to 'eliminate the … problem of debt collectors dunning the wrong person or attempting to collect debts *which the consumer has already paid*.'" *Id*. (citations omitted) (emphasis added). That finding actually helps Plaintiff in this case, not ACCB. It should also be noted that these decisions are also not binding on this Court.

**b.**      **ACCB Has No Bona Fide Error Defense In This Case, And Cannot Obtain Summary Judgment Even If It Had Such A Defense**

Finally, this is not a "bona fide error" case.   Although the Third Circuit has not specifically addressed the issue, "a majority of circuit courts have held that this defense is only available for clerical and factual errors" *Piper v. Portnoff Law Associates*, 274 F. Supp. 2d 681, 688 (E.D. Pa. 2003), *aff'd*, 396 F.3d 227 (3d Cir. 2005); *see also  Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451-52 (8th Cir. 2001); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir. 1989); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982).   This is not a case of a clerical or factual error.   There was no computer malfunction and nobody copied or transcribed an incorrect date or code.

Importantly, ACCB's president and Rule 30(b)(6) witness testified that there was no error here at all, bona fide or not:

> 2    Q    Okay.  So this was handled according to
> 3    established policy at ACCB.  This account here for
> 4    Mrs. Dixon-Rollins was not a deviation.  Correct?
> 5    Sometime somebody drops the ball or somebody --
> 6    sometimes a computer error is made.  That's not this
> 7    case.  This was handled according to policy.  Is that
> 8    your testimony?
> 9        A    I believe it is, yes.

(*See* Exhibit 5, Dreher Dep. at 218) (*See Id.* at 144) (ACCB is always in complete compliance with the law and there was "no violation" in Plaintiff's case).

Given that ACCB believes that it handled Plaintiff's case properly according to its standard policy and that it was in complete compliance with its legal obligations, it seems logically impossible that the "violations," which it denies ever occurred, "resulted from a bona fide error, *notwithstanding* the maintenance of procedure reasonably adapted to avoid such an error." *See* 15 U.S.C.  § 1692k(c) (emphasis added).

24

In fact, the opposite is true.  The procedures that ACCB followed were *not* "reasonably adapted to avoid such an error" and, precisely because they were not "reasonable," they resulted in the error.  In order for ACCB to meet *its* burden for a bona fide error defense, it will need to show that its reasonable procedures would have led to a different result.  *See Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008) ("bona fide error" defense is an affirmative defense, on which the debt collector bears the burden of proof).  Yet ACCB's witnesses testified that no one deviated or made an error in implementing its procedures here.  (*See* Exhibit 5, Dreher Dep. at 109, 142-44, 192, 196, 218).  (*See* PCSF at ¶ C34).  Thus the error here happened *because* of the procedures, not because of a clerical error where someone failed to follow the procedures.

Finally, because a bona fide error defense turns upon factual findings concerning the "reasonableness" of Defendant's procedures, it is not an issue that can be addressed at summary judgment in any event, and must be left for the jury.  *See Romano v. Williams & Fudge, Inc.*, 644 F. Supp. 2d 653, 658 (W.D. Pa. 2008) ("genuine disputes of material fact must be submitted to a jury to determine whether defendant can prove by a preponderance of the evidence that its error was a bona fide error and whether the violation was not intentional within the meaning of Section 1692k(c)"); *see also Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 529 (E.D. Pa. 1996) (even in computer malfunction case, finding that bona fide error defense not appropriate, and granting summary judgment to plaintiff-consumer as to FDCPA section 1692e(11) claim).

In sum, Plaintiff may proceed to the jury with all of her FDCPA and FCEUA claims.

### 3.  Plaintiff Has Withdrawn Her Claim Under FCRA Section 1681q

Plaintiff stipulated with ACCB's counsel to dismiss her FCRA section 1681q claim, which stipulation was filed at Docket No. 43.

### 4.  ACCB Failed To Conduct Reasonable Investigations Into Plaintiff's Repeated Disputes, In Violation Of FCRA Section 1681s-2(b)

It is well settled that FCRA section 1681s-2(b) "provide[s] a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute." *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296, 1300 (D.N.M. 2000).[11]  In this case, ACCB repeatedly failed in its duty to investigate and correct disputed consumer credit data.  15 U.S.C. § 1681s-2(b).

FCRA section 1681s-2(b) provides in pertinent part:

> (b) Duties of furnishers of information upon notice of dispute
> (1) In general
> After receiving notice pursuant to section 1681i (a)(2) of this title
> of a dispute with regard to the completeness or accuracy of any
> information provided by a person to a consumer reporting agency,
> the person shall—

---

[11]  *See also Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1060 (9th Cir. 2002); *Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F. Supp. 2d 150 (D. Puerto Rico 2002); *Aklagi v. Nationscredit Financial*, 196 F. Supp. 2d 1186 (D. Kan. 2002); *Hawthorne v. Citicorp Data Systems, Inc.*, 216 F. Supp. 2d 45 (E.D.N.Y. 2002); *RedHead v. Winston & Winston, P.C.*, 2002 WL 31106934 (S.D. N.Y. September 20, 2002); *Thomasson v. Bank One, Louisiana, N.A.*, 137 F. Supp.2d 721 (E.D. La. 2001); *Scott v. Amex/Centurion S&T*, 2001 WL 1645362 (N.D. Tex. Dec. 18, 2001); *Olexy v. Interstate Assurance Co.*, 113 F. Supp.2d 1045 (S.D. Miss. 2000); *McMillan v. Experian Information Services, Inc.*, 119 F.Supp.2d 84 (D.Conn. 2000); *Dornhecker v. Ameritech Corp.*, 99 F. Supp.2d 918 (N.D.  Ill. 2000); *Campbell v. Baldwin*, 90 F. Supp.2d 754 (E.D.Tex. 2000); *Banks v. Stoneybrook Apartment*, 2000 WL 1682969 (M.D. N.C. 2000); *Brown v. Maine Medical Center*, 1999 WL 33117137 (D.Me. 1999); *Bruce v. First U.S.A. National Association*, 103 F. Supp.2d 1135 (E.D.Mo. 2000); *Johnson v. United States of America-Department of Defense*, 2000 U.S. Dist. LEXIS 21087 (D. Minn. 2000); *Mandly v. Bank One Dayton*, 2000 U.S. Dist. LEXIS 16269 (D. Ariz. 2000); *Ryan v. Trans Union Corp.*, 2000 U.S. Dist. LEXIS 11191, 2000 WL 1100440 (N.D. Ill.); *Thompson v. The Electronic Transaction Corp.*, 2000 U.S. Dist. LEXIS 5275 (N.D. Miss.); *Whitesides v. Equifax Credit Information Services, Inc.*, 125 F. Supp.2d 807 (W.D.La. 2000).

> (A) conduct an investigation with respect to the disputed
> information;
> (B) review all relevant information provided by the consumer
> reporting agency pursuant to section 1681i (a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting
> agency;
> (D) if the investigation finds that the information is incomplete or
> inaccurate, report those results to all other consumer reporting
> agencies to which the person furnished the information and that
> compile and maintain files on consumers on a nationwide basis;
> and
> (E) if an item of information disputed by a consumer is found to be
> inaccurate or incomplete or cannot be verified after any
> reinvestigation under paragraph (1), for purposes of reporting to a
> consumer reporting agency only, as appropriate, based on the
> results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b) (emphasis added).

### a.    Plain Text Reading Of FCRA Section 1681s-2(b)

The text of this statutory provision is clear.  *See U.S. v. Ron Pair Enterprises, Inc.*, 489

U.S. 235 (1989) (where the statute's language is plain, the court's function is to enforce it

according to its terms); *U.S. v. Cheryl Schneider*, 14 F.3d 876, 879 (3d Cir. 1994) ("The best

evidence of Congress' intent is the text of the statute.").  Contrary to ACCB's suggestion, there

is no requirement for any consumer to provide a "proof of payment" or any particular money

order or other document or evidence in order to invoke a proper dispute.  FCRA section 1681s-

2(b) merely requires "notice" of a dispute pursuant to "section 1681i(a)(2)," and then shifts the

burden to the credit furnisher to take several specific steps in conducting an investigation.  FCRA

section 1681i(a)(2), in turn,  provides:

> (2) Prompt notice of dispute to furnisher of information
> (A) In general
> Before the expiration of the 5-business-day period
> beginning on the date on which a consumer reporting agency

> receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

15 U.S.C. § 1681i(a)(2).  There is absolutely no requirement or duty for the consumer to provide proof of payment or any other evidence in any part of the statute implicated here.

**b.    Case Law Interpreting FCRA Section 1681s-2(b)**

Nor has any court found such a requirement in an FCRA section 1681s-2(b) case. Federal courts have construed FCRA section 1681s-2(b) to require furnishers of credit data, such as ACCB, not only to conduct an investigation into credit bureau disputes, but also to be qualitatively reasonable in their investigations as the circumstances warrant.  *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *see also Bruce v. First U.S.A. Bank, Nat. Ass'n.,* 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000).   As the Fourth Circuit observed in affirming a denial of a credit finisher's motion for summary judgment in an FCRA case, a jury may find that a credit furnisher's investigation was <u>unreasonable</u> if the evidence establishes (such as in this case) that the credit furnisher did not look beyond the information contained in its own computer system and did not consult any underlying documents, such as the original account application.  *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

Moreover, questions of the reasonableness of a company's investigation under the FCRA are usually left for the jury.  *See Cushman*, 115 F. 3d 220, 225-27; *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994); *see also Johnson v. MBNA, supra*; *Richardson v. Fleet Bank of Mass.*, 190 F. Supp.2d 81, 88 (D. Mass. 2001) (noting reasonableness of FCRA investigation is usually a question for a jury); *Agosta v. Inovision, Inc.,* 2003 WL 22999213  (E.D. Pa. Dec. 16,

2003) (denying summary judgment in an FCRA case and allowing reasonableness of credit furnisher's investigation to be determined by jury); *Evantash v. G.E. Capital Mortg. Servs., Inc.*, 2003 WL 22844198  (E.D. Pa. Nov. 25, 2003) (same); *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) (same).[12]

### c.    Application To Facts

Under the applicable standard, the facts of record here and reasonable inferences therefrom can lead a reasonable jury to find for the Plaintiff and against ACCB on the issue of the reasonableness of ACCB's alleged "investigations" into Plaintiff's credit disputes.

First, a reasonable jury could find that ACCB never investigated the disputes, at least five of which fall within the two years prior to the filing of this lawsuit.  (PCSF at ¶¶ C32, C47-C52). The records in this case show that ACCB entered the credit bureau disputes into its system and responded to them in the same *minute.*  (PCSF at ¶ C51).  There was simply no time for anything resembling an "investigation."  ACCB's president and Rule 30(b)(6) witness agreed that ACCB did nothing to investigate:

```
10   Q   Okay.  There's absolutely no record that ACCB
11      did anything to investigate this dispute.  Correct?
12       A   Yes.
```

---

[12]      Even if a credit item is technically accurate, a furnisher still violates the FCRA if the way in which it reports that item is "misleading or materially incomplete."  *Evantash v. G.E. Capital Mortg.* Servs., Inc., 2003 WL 22844198, at *4 (E.D. Pa. Nov. 25, 2003); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 42 (D.C. Cir. 1984).  A credit item may be considered inaccurate or incomplete for purposes of the FCRA if the way in which a furnisher reported it is misleading to potential creditors.  *Agosta v. Inovision, Inc.*, 2003 WL 22999213, at *5 (E.D. Pa. Dec. 16, 2003*); see Curtis v. Trans Union*, Nos. 02-C-207, 02-C-208, 2002 WL 31748838, at * 4 (N.D. Ill. Dec. 9, 2002) (finding that even factually correct information may be "inaccurate" for FCRA purposes where such information may be misleading to a party reviewing the consumer's credit report); *see also DiPrinzio v. MBNA America Bank, N.A.*, Civ. No. 04-872, 2005 WL 2039175, at *3-4 (E.D. Pa. Aug. 24, 2005) (materially incomplete reporting of a true credit account is not accurate for FCRA purposes where creditor omitted that consumer had a disputed joint account and had separated from her husband who had actually incurred the debt after separation).

> 13     Q     All right.  But it did verify to Experian
> 14     that the account was reported as accurate with a money
> 15     owing.  Correct?
> 16         A     As reported, yes.
> 17         Q     Okay.  And at least as far as this line is
> 18     concerned this doesn't say anything about it being
> 19     disputed.  It just says verified as reported.  Correct?
> 20         A     Yes, not adequate report -- notations.

(*See* Exhibit 5, Dreher Dep. at 196).  (PCSF at ¶ C49).  Later, Mr. Dreher confirmed that the only

record -- the "work card" -- that ACCB possesses about its alleged "investigations" into

Plaintiff's multiple credit bureau disputes shows that ACCB did not truly investigate *any* credit

bureau dispute made by Plaintiff:

> 13     Q     Sir, isn't it true that with respect to the
> 14     credit bureau disputes there is not any information or
> 15     any notation in any of your records that anybody at your
> 16     company spoke to a single person or looked at a single
> 17     document in conducting an investigation?
> 18         A     There's nothing notated on the work card.

(*See* Exhibit 5, Dreher Dep. at 214) (PCSF at ¶ C51).  Thus, a reasonable jury could find that

ACCB never truly "investigated" at all per FCRA section 1681s-2(b).

A reasonable jury can also find that ACCB's actions, if they amount to an

"investigation," were not a reasonable investigation, thus in violation of FCRA section 1681s-

2(b)(1)(A).  For example, a reasonable jury could conclude that under the circumstances of this

case ACCB should have contacted the landlord, the landlord's attorney, Plaintiff's landlord-

tenant attorney Mr. Lipman, or the court to find out whether it could verify that the account was

paid.  ACCB could have asked for further information from Plaintiff or Chancellor if it needed it.

Indeed, Chancellor had proof of payment in its file for that apartment.  ACCB took none of those

actions.  (PCSF at ¶ C52).

Now ACCB argues that it could have used more information from Plaintiff.  But if that were the case, it never asked for it from Plaintiff or anybody during the years of credit bureau disputes.  (PCSF at ¶ C49).  Thus, a reasonable jury could find that ACCB was not reasonable in investigating under the circumstances of this case.

A reasonable jury could further find that ACCB violated FCRA section 1681s-2(b)(1)(D) on or about May 21, 2007, when it deleted the collection account from the Equifax CRA but failed at the same time to also delete it from TU and Experian despite the fact that ACCB, according to its president, had a duty to report those results to all the CRAs at the same time.  (PCSF at ¶¶ B28 & C23).  ACCB continued to report the $690 collection account to TU and Experian well into 2009.

A reasonable jury could also find that if ACCB believed that it could not come to a conclusive result, or could not "verify" the fact that Plaintiff owed $690 to her old landlord, it should have deleted or blocked the future reporting of the account, as the FCRA provides at section 1681s-2(b)(1)(E).  This would have been an easy solution for ACCB.  FCRA section 1681s-2(b)(1)(3) provides that if a furnisher truly cannot get to the bottom of a dispute, or if its investigation is "incomplete" or "inaccurate," it should err on the side of caution and simply block or delete the disputed account.  ACCB, however, even refused to do that. [13]

---

[13]     The cases that ACCB cites in its brief (ACCB Mem. at 13-15) are not controlling or on point. For example, the defendant in *Farren*, who actually lost summary judgment as to the FCRA section 1681s-2(b) negligence claim, established that its procedures for processing consumer disputes included "review[ing] the activity on the account to determine whether the collector notes contained anything that would indicate that the information RJM had received from Fingerhut when the account was acquired was not accurate," and it was not merely parroting information the original creditor provided to it as Defendant here purports to be able to do. *Farren v. RJM Acquisition Funding, LLC*, 2005 WL 1799413, *2 (E.D. Pa. July 26, 2005). Additionally, that court held that plaintiff and the CRAs never told defendant that plaintiff was a victim of fraud, but only characterized the dispute as "not mine-provide complete ID," which would not have alerted the defendant as to the true problem. *Id.* at *5. That is not the scenario

In sum, as virtually every other FCRA summary judgment decision in this Circuit has found, these types of considerations present genuine issues of material fact as to the "reasonableness" of a company's conduct in "investigating." These issues are inappropriate for disposition at summary judgment and must go to the jury.

### 5. ACCB's Conduct Here May Be Deemed By A Reasonable Jury To Constitute One Or More Willful Violations Of The FCRA

ACCB alternatively argues that, even if it violated the FCRA, none of its violations could have been willful. (ACCB Mem. at 17-18). Under the facts of this case, a reasonable jury may find not only that ACCB violated the FCRA, but that it did so *willfully*. A willful violation allows a jury to award punitive damages. *See* 15 U.S.C. § 1681o(a)(3).

### a. The Legal Standard: Reckless Or Conscious Disregard

The standard to show a "willful" violation under the FCRA is not high. A plaintiff need not show malice, but only that the defendant recklessly committed an act in reckless or conscious disregard of the rights of others. *See Cushman*, 115 F. 3d 220, 227. This is a lower standard than the standard for willful violations or punitive damages claims under most common law torts. Although the terms "willful" or "willfully" are not defined in the FCRA, case law has held that neither malice nor evil motive need be established for a finding of a willful violation. *Id.*; s*ee also Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (citing *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983)).

---

here. Similarly in *Malm*, the court held that the defendant "was not given a complete examination of [p]laintiff's concerns" that the account was only his ex-wife's or alternatively fraudulently opened in his name by her, and had only received general notice that the plaintiff disputed the account. *Malm v. Household Bank (SB), N.A.*, 2004 WL 1559370, *5 (D. Minn. July 7, 2004). Here, in contrast, there is no dispute that ACCB received clear disputes and understood them to be that Plaintiff had already paid the disputed landlord account, and therefore did not owe any money.

Many courts have noted that willfulness under the FCRA is demonstrated by recklessness and not by a knowing violation of the law. *See id.* at 293 (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022 (1987)); *Cushman*, 115 F. 3d at 227; *see also Reynolds v. Hartford Fin. Servs. Group,* 435 F.3d 1081, 1097-99 (9th Cir. 2006) (discussing meaning of "willfully" with CRA and relying on *Cushman*). Such reckless or conscious disregard may be found when a defendant adopts a policy either knowing it to be in "contravention of the rights possessed by consumers under the FCRA or in reckless disregard for whether the policy contravenes those rights." *Cushman*, 115 F. 3d at 227; *see also Reynolds v. Hartford Fin. Servs. Group,* 435 F.3d 1081, 1097-99 (9th Cir. 2006).

Multiple cases within this District, examining the willfulness standard in FCRA investigation cases, have found that plaintiffs may proceed to trial with their willfulness claims where the defendant's conduct is not merely a result of a negligent act that was promptly cured. *See Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003) (Schiller, J.) (defendant's conduct was willful, and not merely an "isolated instance of human error . . . promptly cure[d]") (quoting *Boris v. Choicepoint Servs.*, 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003)) (emphasis added); *see also Lawrence v. Trans Union, LLC*, Civ., 296 F. Supp. 2d. 582, at. 590; *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, at 321; *Evantash v. G.E. Capital Mortgage Servs., Inc.*, E.D. Pa. Civ. No. 02-1188, 2003 WL 22844198, at *8.

Chief Judge Bartle also agreed with this interpretation of the willfulness standard under the FCRA when he permitted punitive damages to go to the jury in an FCRA investigation matter with facts less egregious than the case at bar. *See Abusaab v. Equifax Information Services LLC*, Civ. No. 05-5094, 2006 WL 1214782 (E.D. Pa. May 4, 2006).

FCRA cases involving investigations by *credit furnishers* such as ACCB are no different. *See DiPrinzio v. MBNA America Bank, NA*, Civ. No. 04-872, 2004 WL 2039175 (E.D. Pa. Aug. 24, 2005) (Smith, J.). The *DiPrinzio* court, for example, denied summary judgment and permitted the plaintiff to proceed to trial with her willful, punitive damages claim because the credit furnisher failed to conduct a reasonable investigation and to clearly disclose that the disputed account had charges that were incurred by the plaintiff's former husband after separation. *Id.; see also Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003) (Schiller, J.) (punitive damages permitted to go to jury against CRAs and credit funisher after multiple failed FCRA investigations).[14]

### b. *Safeco* Affirmed The Reckless Disregard Standard

The U.S. Supreme Court's 2007 decision in *Safeco* further undermines ACCB's argument. *See Safeco Insurance Co. of America v. Burr,* 127 S. Ct. 2201 (2007). In *Safeco*, the U.S. Supreme Court was asked to decide which of two conflicting standards governed FCRA willfulness claims, and it adopted the lower and least rigorous "reckless disregard" standard, which this Court has followed for years.

Prior to *Safeco*, there was a circuit split as to what level of *scienter* should be applied in assessing FCRA willfulness claims. Several circuits had held that a knowing violation of the law

---

[14] Cases from other federal courts have also held that consumers may proceed to trial with their FCRA willfulness claims based upon conduct similar to what courts within the Third Circuit have found could constitute a willful violation of the law. *See, e.g., Reynolds v. Hartford Fin. Servs. Group,* 435 F.3d 1081, 1097-99 (9th Cir. 2006) (discussing meaning of "willfully" with CRA and relying on *Cushman*); *Apodaca v. Discover Fin. Servs. et al.*, 417 F. Supp. 2d 1220, Civ. No. 04-0717, 2006 WL 538667 (D.N.M. Mar. 2, 2006) (denying defendant's motion for partial summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures); *Sampson v. Equifax Info. Servs. LLC*, Civ. No. 04-187 (S.D. Ga. Aug. 29, 2005) (denying defendant's motion for summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures).

(higher standard) was required for a consumer to prove willfulness under the FCRA, while others, including the Third Circuit and the Ninth Circuit, had held that "reckless disregard" (lower standard) was all that was required.  In *Safeco*, the U.S. Supreme Court endorsed our Circuit's standard, and held that proof of "reckless disregard" by a defendant (*i.e.* not a knowing violation of law, as the credit industry argued) is sufficient to establish a willful violation of the FCRA.  *Safeco*, 127 S. Ct. at 2208-2210.

"Reckless disregard" is precisely the FCRA willfulness standard that this Court has followed for many years.  *See Cushman v. Trans Union Corp.*, 115 F. 3d 220, 227 (3d. Cir. 1997).  In *Safeco*, the U.S. Supreme Court cited our Circuit's decision in *Cushman* as the correct standard for assessing willfulness claims.  *Safeco* therefore forever disposed of the argument that a consumer-plaintiff must show that a defendant knowingly violated the FCRA.

Thus, the inquiry now is not the standard for a willfulness claim, but rather when the "reckless disregard" standard is met in an FCRA case brought against a defendant.[15]  Unlike the situation in the Circuits which had previously followed the knowing violation standard, this question has been thoroughly investigated and answered by the courts within this Circuit, as discussed and cited above.   These cases also demonstrate that the reckless disregard standard is a fact-bound inquiry, a concept that our Circuit just recently reiterated.  *See Whitfield v. Radian Guaranty, Inc.*, 501 F.3d 262 (3d Cir. 2007).   Indeed, in *Whitfield* the Third Circuit, in a post-*Safeco* FCRA decision, reversed a grant for summary judgment on an FCRA willfulness claim

---

[15]     *Safeco* itself is not instrumental on that issue here, as it involved the duty of credit "users" to provide certain adverse action notice to consumers under FCRA section 1681m.  That decision revolved around the meaning of the word "increase" within section 1681m for purposes of insurance premiums and quotes.  ACCB is not a "user" and 1681m has absolutely nothing to do with the claims in this case.

and held that the issue of willfulness was for the jury to decide.  *Id.* at 271.    The Third Circuit

stated:

> We do not suggest that a factfinder could not or would not
> determine that [the defendant] did not act willfully.  Instead, *we*
> *hold that whether it did so is a factual issue, not a question of law,*
> *and it therefore cannot be decided either on appeal or by the*
> *District Court as a matter of law.*

*Id*. at 271) (emphasis added) (vacated on mootness grounds, 2008 WL 2329934 (U.S. 2008)).

### c.    Plaintiff Has Come Forward With A Factual Record That Would Easily Permit A Reasonable Jury To Find That ACCB's Violations Of The FCRA In This Case Were Willful

Here, the factual record that Plaintiff has amassed is more than sufficient evidence to

present a genuine issue of material fact as to whether ACCB willfully violated the FCRA.    The

question of willfulness, therefore, must be left for the jury.

The jury can, for example, reasonably determine that ACCB's conduct was in reckless or

conscious disregard for Plaintiff's rights because ACCB repeatedly and systemically failed to get

to the bottom of Plaintiff's disputes.   (PCSF at ¶¶ C34-42, C47-53).   The jury can reasonably

find that ACCB's practice of never going beyond the limited information provided by

Chancellor, and blindly accepting Chancellor's word, shows a reckless disregard in the context

of this case.   This practice of simply copying another company's word or records, in lieu of

conducting a true investigation, is known as "parroting" and has already been deemed by several

courts within our Circuit to constitute a basis for FCRA willfulness claims to go to the jury in

similar contexts.    *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582, at 590 ("merely

parroting information without verifying its accuracy, could be found by a reasonable jury to be

knowing or reckless violations of the FCRA"); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311,

at 321; *Sheffer v. Experian Info. Solutions, Inc. and Trans Union*, Civ. No. 02-7407, 2003 WL 21710573 at * 3 (Schiller, J.).

Other facts may also support a "reckless disregard" finding by the jury: the fact, for example, that ACCB's records show that it spent no more than *one minute* on each of the credit bureau "investigations" (PCSF at ¶ C51); the fact that ACCB failed so many times to properly address Plaintiff's problem, despite acknowledging that its records reflect notice of the dispute at least 15 times (PCSF at ¶ C32); the fact that ACCB admits that it handled Plaintiff's credit disputes according to "policy" and, at the same time, also admits that its credit bureau "investigators" did not speak with a single person and did not review a single document (PCSF at ¶ C49); and the list goes on.

In sum, the record here provides more than sufficient evidence on which a jury may reasonably make a reckless or conscious disregard finding.  Accordingly, ACCB's motion should be denied.

### 6. Because ACCB's Conduct Was Willful, Plaintiff's Common Law Claims Are Not "Preempted" By FCRA Section 1681h(e)

ACCB contends that Plaintiff should not be permitted to proceed to trial with her common law claims of defamation, negligence and invasion of privacy/false light.  (*See* ACCB Mem. at 8-9).  The entire and exclusive basis for ACCB's "preemption" argument is that it did not "willfully" violate the FCRA.[16]  For the same reasons that Plaintiff may show willfulness and thus proceed to trial with her FCRA claim, discussed above, ACCB's preemption argument fails. *See DiPrinzio v. MBNA America Bank*, N.A., Civ. No. 04-872, 2005 WL 2039175 at *3-5 (E.D.

---

[16]    ACCB does not challenge the merits of Plaintiff's common law claims; it only argues that Plaintiff cannot show willfulness and that her claims are "preempted."

Pa. Aug. 24, 2005) (negligence claim, including relief for punitive damages, not preempted

where jury could find that FCRA section 1681s-2(b) violation was willful).[17]

Further, the limitations to common law liability set forth at FCRA section 1681h(e), on

which ACCB relies, impose a "willfulness" threshold only for actions stemming from

disclosures to the consumer, but not all FCRA actions.  As one court recently explained:

> Section 1681h(e) suggests not that Congress has limited actions
> brought in all areas regulated by the FCRA but that defendants will
> have qualified immunity from actions based on information
> disclosed pursuant to certain provisions of the FCRA. *Webb v. Bob
> Smith Chevrolet, Inc.*, 2005 WL 2065237 at *5 (W.D.Ky. Aug. 24,
> 2005). In *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F.Supp.2d
> 810, 814-15 (W.D.Ky.1999), the district court explained that,
> 'section 1681h(e) is not actually a preemption provision. Rather, it
> is a quid pro quo grant of protection for statutorily required
> disclosures. Since various parts of the federal statute require
> consumer reporting agencies and information users to disclose
> information to consumers under certain circumstances, this section
> guarantees that the agencies or users cannot be sued for those
> required disclosures [under FCRA sections 1681g, 1681h and
> 1681m] under state tort law.  It makes sense that acts required to be
> done by the FCRA are immunized from state tort liability.'

*Poore v. Sterling Testing Sys., Inc.,* 410 F. Supp. 2d 557, 573 (E.D. Ky. 2006).

---

[17]    Unlike other federal statutes that preempt the field, the FCRA has no such broad
preemption language.  The FCRA simply imposes a higher scienter standard for certain state
common law claims, such as negligence, defamation and invasion of privacy under some
circumstances.  *See* 15 U.S.C. § 1681h(e).  If a plaintiff can proffer evidence presenting a
genuine issue of fact as to whether the defendant's conduct was willful under the FCRA, the
common law claims are appropriate and not limited in any way.  Several decisions within the
Eastern District of Pennsylvania have held that a plaintiff in an FCRA case may proceed to trial
with his or her common law claims for negligence, defamation and invasion of privacy/false
light, so long as those claims are premised upon willful conduct pursuant to FCRA section
1681h(e).  *See DiPrinzio v. MBNA America Bank*, N.A., Civ. No. 04-872, 2005 WL 2039175 at
*3-5 (E.D. Pa. Aug. 24, 2005) (Smith, J.)*; see also Lawrence v. Trans Union, LLC*, 296 F.Supp.
2d. 582, 590-591, 2003 WL 22992081 at * 5-6 (E.D. Pa. Dec. 11, 2003) (Brody, J.); *Crane v.
Trans Union, LLC*, 282 F. Supp. 2d 311, 321-22 (E.D. Pa. 2003) (Dalzell, J.); *Sheffer v. Experian
Info. Solutions, Inc.*, 249 F. Supp.2d 560, 563 (E.D. Pa. 2003) (Schiller, J.); *Sheffer v. Experian
Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003)
(same) (Schiller, J.).

Here, Plaintiff's common law claims are based upon false information provided or furnished by ACCB to TU and the other nations CRAs, and for ACCB's failure to properly handle Plaintiff's repeated disputes.  They are not based upon the disclosures to consumers required under sections 1681g, 1681h and 1681m.  Nor are they based upon information disclosed by a user of a consumer report.  Accordingly, Plaintiff's state law claims are not prohibited or limited under section 1681h(e) as to ACCB in the case at bar.

## IV.    CONCLUSION

For all of the reasons set forth above, Defendant TU and Defendant ACCB's motions for summary judgment should be denied.

FRANCIS & MAILMAN, P.C.

_/s/ John Soumilas_____
JOHN SOUMILAS
GEOFFREY H. BASKERVILLE
Attorneys for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110

DATE: December 18, 2009          (215) 735-8600