IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN DIXON-ROLLINS )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>TRANS UNION, LLC, et al. )<br>)<br>Defendants. )<br>) | Civil Action No. 09-646 |

**PLAINTIFF CARMEN DIXON-ROLLINS' PRETRIAL MEMORANDUM**

Plaintiff Carmen Dixon-Rollins, by and through her undersigned counsel, submits this Pretrial Memorandum in accordance with Local Rule 16.1(c) and this Court's Scheduling Order dated June 17, 2009.

**I.   NATURE OF THE ACTION AND JURISDICTION**

This is an action for damages brought by an individual consumer against the Defendants Trans Union, LLC ("TU"), Associated Credit and Collections Bureau, Inc. ("ACCB") and Chancellor Properties, Inc. ("CP") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, *as amended*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. §§ 201.1, *et seq.*, defamation, negligence and invasion of privacy/false light.

Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

**II.   SUMMARY OF FACTS**

In summary fashion, the record in this case shows that Plaintiff Carmen Dixon-Rollins owes no money to her old landlord, Awbury Park Apartments. Plaintiff, a Philadelphia police officer, was sued by Awbury Park Apartments in 2004 for $1,163 supposedly for certain unpaid

charges and penalties or for alleged damage to an apartment that she rented.[1]  Nevertheless, Plaintiff defended the underlying landlord-tenant lawsuit and in October 2004 settled all claims with the landlord for $530.  The settlement was memorialized by counsel in that case in letters, Plaintiff paid by money order in the amount of $531, which cleared, and Plaintiff believed that the unfortunate landlord dispute was behind her.

But the landlord's rent collector and property management company, Defendant CP, nevertheless placed the alleged "debt" for collections with ACCB, for no appropriate reason and in violation of its own operating rules.[2]  ACCB attempted to re-collect the already paid debt and also reported it to the CRAs on Plaintiff's credit reports as a highly derogatory unpaid "collection" with a "$690 balance."  Plaintiff discovered the obvious error and disputed it in early 2005.

The record in this case shows that in 2005, 2006, 2007, 2008 and 2009 Plaintiff disputed and re-disputed this collection account repeatedly with ACCB, TU, other CRAs, CP and even with the Better Business Bureau.  None would help her to correct the obvious and harmful error, which continued to report against her until shortly *after* Plaintiff brought this lawsuit.  The Defendants received notice of this dispute over twenty (20) times total.

Plaintiff even had her former attorney contact an ACCB debt collector, who responded that "the letter from your attorney means nothing to me."  ACCB and TU repeatedly "verified" the collections account as accurate, with Plaintiff allegedly still owing "$690."  Defendants did nothing to correct the problem until May 2009 despite their statutory duties to report only

---

[1]  The parties' accounts of what actually led to the underlying dispute with the landlord are highly contested, and no Defendant in this case has offered any coherent or creditable evidence showing that Plaintiff *ever* actually owed any money to the landlord.

[2]  CP's Rule 30(b)(6) witness testified in this case that no "debt" should have been placed with ACCB until CP assisted the landlord to obtain a "judgment" against any given tenant.  No judgment was ever obtained against Plaintiff.

"accurate" information, to carefully "investigate" consumer disputes, and to promptly delete any debt that cannot be "verified" by them as true and accurate.

Defendants admit that they simply parroted the inaccurate records that led to the error in the first place. No Defendant contacted Plaintiff or her husband for any information; no one contacted the attorneys involved in the underlying landlord dispute or any third party, such as the court; and no one searched for the money order or any record of payment. Indeed, Defendants "investigated" the repeated credit disputes by *not* interviewing or speaking with *a single* person, and by *not* unearthing or even searching for *a single* document. Even when Plaintiff provided proof of the payment to them and relevant contact information for all parties and counsel involved in the landlord dispute, these Defendants ignored it. Defense records show that they intended to continue to report this highly derogatory collection item for seven (7) years.

For the two years prior to filing this lawsuit (the statute of limitations period for most claims), Plaintiff's credit had only one "adverse" or "derogatory" account -- the collection item that is the subject of this lawsuit. The account was sometimes double-reporting as both a CP account and an ACCB collection account. The ACCB account always reported in derogatory status and with a balance of $690.

When Plaintiff needed credit, she was denied, delayed or offered exceedingly high interest rates. For the two years prior to filing this lawsuit, Plaintiff has presented evidence that she was denied a personal loan to replace her leaky windows through Wells Fargo on 11/24/08; was offer only an unaffordable 12.9% interest rate from FCC Financing for the same transaction on 12/1/08; was denied credit by Capital One on 11/20/08; had to accept a 23% interest loan through CitiFinancial on 8/14/07; and was charged a .5% higher interest rate on her present mortgage by Gateway Funding in the early part of 2009 due to this single supposedly unpaid

blemish on her credit record. All of these adverse credit actions were taken because of TU credit reports sold to the various potential creditors (including Wells Fargo, CitiFinancial, FCC Financing, Capital One, and Gateway Funding), with the ACCB account reporting as the only derogatory credit item in Plaintiff's credit report.

The Gateway Funding branch manager who personally processed Plaintiff's loan testified that Plaintiff's poor credit score disqualified her from competitive "conventional" mortgages, and even though he was able to offer Plaintiff an FHA home loan, that loan was .5% more expensive than it otherwise would have been *because* the ACCB collection account reflected an unpaid balance of $690.

Plaintiff also offers detailed evidence and seeks damages for the other lost credit opportunities (such as with Wells Fargo, FFC Financial, Capital One, and Citibank) and for the untold frustration, embarrassment, and related emotional distress that she suffered at the hands of these Defendants for a prolonged period of time. Further, as she wrote in some of her dispute letters through the years, this false reporting has negatively affected her "credibility and character" and has been "truly embarrassing and unfair." Plaintiff also offers evidence of frustration, embarrassment, and other emotional distress. After she repeatedly hit a "brick wall," Plaintiff brought this lawsuit, in which she seeks statutory, actual, treble, and punitive damages, as well as her attorney's fees and costs.

## III. DAMAGES

Due to Defendants' conduct Plaintiff suffered significant emotional distress. For example, Plaintiff had her otherwise very good credit damaged; had her good name, character and reputation harmed by essentially being labeled as a deadbeat on her credit reports; felt frustrated, embarrassed and stressed over the fact that Defendants repeatedly refused to correct

4

the collection account error for years; had headaches; found Defendants' refusal to help her "truly embarrassing and unfair" and "frustrating and degrading."

Plaintiff also lost several credit opportunities, as a result of Defendants' conduct. Specifically, Plaintiff was unable to obtain a loan from Wells Fargo to fix her leaky windows; was offered only an unaffordable 12.9% APR loan from FCC Financing; was denied a loan by Capital One; received only an elevated interest rate of 23% from CitiFinancial; was unable to obtain the best interest rate when she sought to refinance her mortgage and was charged an extra .5% interest rate by Gateway Funding specifically because of the inaccurate $690 collection account. Plaintiff's banking expert Thomas J. Norton can calculate the financial loss on the mortgage loan. All of these emotional distress and credit losses stemmed from credit reports prepared and published in the two years prior to this lawsuit.

**IV.   WITNESSES**

    1.   Carmen Dixon-Rollins
        5925 Charles Street
        Philadelphia, PA  19135

        Will testify concerning her claims and damages as per her deposition.

    2.   Maurice Rollins
        5925 Charles Street
        Philadelphia, PA  19135

        Will testify concerning his attempts to correct the inaccurate reporting and also about Plaintiff's emotional distress and financial damages.

3. Matthew A. Lipman, Esquire
   McElroy, Deutsch, Mulvaney & Carpenter, LLP
   1 Penn Center – Suburban Station
   1617 JFK Boulevard, Suite 1500
   Philadelphia, PA  19103-1815

   Will testify concerning the underlying landlord-tenant lawsuit and his attempts to correct the inaccurate reporting on Plaintiff's behalf.

4. Tomas J. Norton, CFE
   The Norton Group
   P.O. Box 2400
   Princeton, NJ  08543

   Will testify as to Plaintiff's economic damages, calculating the economic impact of Plaintiff paying an extra .5% on her mortgage loan.  (Mr. Norton's CV is attached hereto as Exhibit A).

5. Jarred Nelson
   Gateway Funding, LP
   Nelson Mortgage Team
   300 Welsh Road, Building 5
   Horsham, PA  19044

   Will testify to Plaintiff's mortgage loan application with Gateway Funding, as per his deposition.

6. Steven Newnom
   Trans Union, LLC
   1510 Chester Pike
   Crum Lynne, PA  19022

   Will testify to Defendant Trans Union, LLC's policies, procedures and investigations in connection with Plaintiff's claims.

7. Thomas Dreher
   Associated Credit and Collection Bureau, Inc.
   975 Eyester Boulevard
   Rockledge, FL  32955

   Will testify to Defendant Associated Credit and Collection Bureau, Inc.'s policies, procedures and investigations in connection with Plaintiff's claims.

8.  Dawn D. Eddy
    Associated Credit and Collection Bureau, Inc.
    975 Eyester Boulevard
    Rockledge, FL  32955

    Will testify to Defendant Associated Credit and Collection Bureau, Inc.'s policies, procedures and investigations in connection with Plaintiff's claims.

9.  Derek B. Cole
    Associated Credit and Collection Bureau, Inc.
    975 Eyester Boulevard
    Rockledge, FL  32955

    Will testify to Defendant Associated Credit and Collection Bureau, Inc.'s policies, procedures and investigations in connection with Plaintiff's claims.

10. Charlene Halicki
    Chancellor Properties, Inc.
    1608 Spruce Street, 3rd Floor
    Philadelphia, PA  19103

    Will testify to Defendant Associated Credit and Collection Bureau, Inc.'s policies, procedures and investigations in connection with Plaintiff's claims.

11. Christy Williams
    Chancellor Properties, Inc.
    1608 Spruce Street, 3rd Floor
    Philadelphia, PA  19103

    Will testify to Defendant Associated Credit and Collection Bureau, Inc.'s policies, procedures and investigations in connection with Plaintiff's claims.

## V.   EXHIBITS

| **Plaintiff's Documents** | | |
|---|---|---|
| P-1 | Mar. 23, 2009 Matthew A. Lipman, Esq. letter to Plaintiff | PTB-1 |
| P-2 | Mar. 18, 2009 Charlene Halicki letter to Plaintiff | PTB-2 |
| P-3 | Mar. 18, 2009 Charlene Halicki letter to Keith Jackson | PTB-3 |
| P-4 | Copy of Deposited Money Order | PTB-4 |
| P-5 | July 28, 2008 Plaintiff letter to Christy Williams | PTB-5 |
| P-6 | Dec. 13, 2007 Christy Williams letter to Plaintiff | PTB-6 |

| | | |
|---|---|---|
| P-7 | Plaintiff's dispute letter | PTB-7 |
| P-8 | May 8, 2007 Plaintiff's dispute letter | PTB-8 |
| P-9 | Oct. 18, 2004 Matthew A. Lipman, Esq. letter to Plaintiff | PTB-9 |
| P-10 | Nov. 8, 2007 Better Business Bureau letter to Plaintiff's husband | PTB-10 |
| P-11 | July 7, 2008 FirstAdvantage letter to Plaintiff enclosing dispute results | PTB-11 to PTB-12 |
| P-12 | Oct. 18, 2004 Matthew A. Lipman, Esq. letter to Cohen & Willwerth, P.C. | PTB-13 |
| P-13 | Money Order Receipt | PTB-14 |
| P-14 | July 10, 2008 Money Order Tracing/Refund Request | PTB-15 |
| P-15 | July 23, 2008 Integrated Payment Systems letter to Plaintiff enclosing P-4 (cashed money order) | PTB-16 |
| P-16 | Nov. 24, 2008 Wells Fargo denial letter to Plaintiff | PTB-17 |
| P-17 | Aug. 14, 2007 Citifinancial Mortgage Disclosure Statement, Note and Security Agreement | PTB-18 |
| P-18 | Feb. 5, 2009 Plaintiff's Experian credit report | PTB-19 to PTB-24 |
| P-19 | Jan. 5, 2009 Plaintiff's Experian credit report | PTB-25 to PTB-34 |
| P-20 | July 7, 2008 Plaintiff's First Advantage credit report | PTB-35 to PTB-37 |
| P-21 | Jan. 20, 2009 Plaintiff's Kroll Factual Data credit report | PTB-38 to PTB-40 |
| P-22 | May 15, 2007 Plaintiff's Trans Union credit report | PTB-41 to PTB-43 |
| P-23 | Jan. 26, 2009 Plaintiff's Trans Union credit report | PTB-44 to PTB-52 |
| | **Tomas J. Norton's Expert Report** | |
| P-24 | Oct. 9, 2009 Expert Report of Tomas J. Norton, CFE | PTB-53 to PTB-267 |
| | **Chancellor Properties, Inc.'s Documents** | |
| P-25 | Defendant Chancellor Properties, Inc.'s Answers to Plaintiff's First Set of Interrogatories Directed To Defendant | PTB-268 to PTB-271 |
| P-26 | Aug. 5, 2002 Plaintiff's Residential Lease Contract | PTB-272 to PTB-280 |
| P-27 | July 8, 2002 Plaintiff's Allstate Insurance Policy | PTB-281 to PTB-284 |
| P-28 | July 15, 2002 Plaintiff's Chancellor Properties Lease | PTB-285 to PTB-287 |
| P-29 | June 23, 2002 Plaintiff's W-9 Form | PTB-288 |
| P-30 | July 15, 2002 Plaintiff's Chancellor Properties Lease | PTB-289 |
| P-31 | June 23, 2002 Plaintiff's Chancellor Properties Application | PTB-290 to PTB-292 |
| P-32 | June 24, 2002 Plaintiff's Experian Credit Profile | PTB-293 to PTB-294 |
| P-33 | Apr. 1, 2002 Neil Leibman, Esq. verification letter | PTB-295 |
| P-34 | Copy of Plaintiff's photo identification | PTB-296 |
| P-35 | Nov. 1, 2004 Cohen & Willwerth, P.C. letter to Awbury Park Apartments with fax confirmation page | PTB-297 to PTB-298 |
| P-36 | Notes from Pam to Melissa | PTB-299 |

| | | |
|---|---|---|
| P-37 | Sept. 16, 2002 Note from Pamela Mundy to Melissa | PTB-300 |
| P-38 | Mar. 12, 2003 Awbury Park letter to Plaintiff | PTB-301 |
| P-39 | June 24, 2004 Note from Barbara Williams to Plaintiff | PTB-302 |
| P-40 | June 25, 2004 Residential History Report with fax confirmation page | PTB-303 to PTB-305 |
| P-41 | July 30, 2004 Payments and Adjustments Detail Form | PTB-306 |
| P-42 | Sept. 27, 2004 Statement of Security Deposit Accounts | PTB-307 |
| P-43 | Aug. 4, 2004 Awbury Parks escrow transfer slip | PTB-308 |
| P-44 | Plaintiff's letter to Christy Williams | PTB-309 |
| P-45 | Dec. 13, 2007 Christy Williams' letter to Plaintiff | PTB-310 |
| P-46 | Oct. 18, 2004 Matthew A. Lipman, Esq. letter to Cohen & Willwerth, P.C. | PTB-311 |
| P-47 | Oct. 18, 2004 Matthew A. Lipman, Esq. letter to Plaintiff | PTB-312 |
| P-48 | Copy of Money Order Receipt | PTB-313 |
| P-49 | Dec. 13, 2007 Christy Williams' letter to Plaintiff | PTB-314 |
| P-50 | Mar. 18, 2009 Charlene Halicki's letter to Plaintiff | PTB-315 |
| P-52 | Mar. 18, 2009 Charlene Halicki's letter to ACCB | PTB-316 |
| P-53 | Mar. 18, 2009 Instant Update to Experian | PTB-317 to PTB-318 |
| P-54 | Mar. 18, 2009 Cohen & Willwerth, P.C. fax to Awbury with Nov. 1, 2004 Letter from Cohen & Willwerth, P.C. enclosing copy of Money Order | PTB-319 to PTB-321 |
| P-55 | Copy of Money Order | PTB-321 |
| P-56 | Mar. 13, 2009 Matthew A. Lipman, Esq. fax to Chancellor enclosing Municipal Court Docket and letters | PTB-322 to PTB-326 |
| P-57 | Municipal Court Docket | PTB-323 |
| P-58 | Oct. 18, 2004 Matthew A. Lipman, Esq. letter to Cohen & Willwerth, P.C. | PTB-324 |
| P-59 | Mar. 13, 2009 Matthew A. Lipman, Esq. letter to Cohen & Willwerth, P.C. | PTB-325 to PTB-326 |
| P-60 | Mar. 18, 2009 Charlene Halicki fax to Tina enclosing Money Order with confirmation page | PTB-327 to PTB-329 |
| P-61 | Copy of Money Order | PTB-328 |
| P-62 | Plaintiff's letter faxed from ACCB to Charlene | PTB-330 to PTB-332 |
| P-63 | Collection Check List | PTB-333 |
| P-64 | Mar. 12, 2009 ACCB fax to Charlene with enclosures | PTB-333 to PTB-338 |
| P-65 | Collection Check List | PTB-333 |
| P-66 | Awbury Park referral for collection | PTB-334 |
| P-67 | Sept. 27, 2004 Statement of Security Deposit Accounts | PTB-335 |
| P-68 | Aug. 5, 2002 Residential Lease Contract | PTB-336 |

| | | |
|---|---|---|
| P-69 | June 2002 Chancellor Properties Application | PTB-337 |
| P-70 | June 14, 2004 Cohen & Willwerth, P.C. letter to Plaintiff | PTB-339 to PTB-340 |
| P-71 | June 10, 2009 Christy Williams email to Charlene Halicki | PTB-341 |
| P-72 | Phone message from Chris Jones, Esq. | PTB-342 |
| P-73 | May 12, 2009 Christy Williams fax to Chris Jones, Esq. (enclosures not provided) | PTB-343 to PTB-344 |
| P-74 | Phone message from Chris Jones, Esq. | PTB-345 |
| P-75 | May 12, 2009 Christy Williams fax to Chris Jones, Esq. (enclosures not provided) | PTB-346 to PTB-347 |
| P-76 | Mar. 12, 2009 ACCB fax to Christy Williams enclosing June 27, 2007 fax | PTB-348 to PTB-349 |
| P-77 | June 27, 2007 Charlene Halicki fax to Kathy Duble with fax confirmation page | PTB-350 to PTB-352 |
| P-78 | Sept. 7, 2006 Chancellor Properties CDV to Experian | PTB-353 |
| P-79 | Aug. 19, 2004 Note from Barbara Williams to Kim | PTB-354 |
| P-80 | Pages from Chancellor Properties, Inc.'s website | PTB-355 to PTB-363 |
| **Associated Credit and Collection Bureau, Inc.'s Documents** | | |
| P-81 | Defendant Associated Credit and Collection Bureau, Inc.'s Responses to Plaintiff's First Set of Interrogatories | PTB-364 to PTB-370 |
| P-82 | Collection Check List | PTB-371<br>ACCB-0001 |
| P-83 | Sept. 27, 2004 Statement of Security Deposit Accounts | PTB-372<br>ACCB-0002 |
| P-84 | Sept. 27, 2004 Collection referral page | PTB-373<br>ACCB-0003 |
| P-85 | July 15, 2002 Plaintiff's application to Chancellor Properties | PTB-374<br>ACCB-0004 |
| P-86 | Aug. 5, 2002 Plaintiff's Residential Lease Contract | PTB-375<br>ACCB-0005 |
| P-87 | Mar. 9, 2009 version of Print Debtor Work Card | PTB-376 to PTB-380<br>ACCB-0006 to ACCB-0010 |
| P-88 | Mar. 17, 2009 email correspondence between Thomas Dreher and Mark D. Mailman, Esq. | PTB-381 to PTB-382<br>ACCB-0011 to ACCB-0012 |
| P-89 | June 24, 2009 FedEx Pickup Confirmation | PTB-383<br>ACCB-0013 |
| P-90 | Apr. 2005 Matthew A. Lipman, Esq. letter to Cohen & Willwerth, P.C. | PTB-384 to PTB-385<br>ACCB-0014 to ACCB-0015 |

| | | |
|---|---|---|
| P-91 | May 23, 2005 Matthew A. Lipman, Esq. fax to ACCB | PTB-386 to PTB-388 ACCB-0016 to ACCB-0018 |
| P-92 | May 23, 2005 Matthew A. Lipman, Esq. letter to ACCB | PTB-387 to PTB-388 ACCB-0017 to ACCB-0018 |
| P-93 | May 16, 2005 Plaintiff's fax to Eric Allen | PTB-389 ACCB-0019 |
| P-94 | June 27, 2007 Charlene Halicki fax to Kathy Duble | PTB-390 ACCB-0020 |
| P-95 | Plaintiff's dispute letter to ACCB | PTB-391 to PTB-392 ACCB-0021 to ACCB-0022 |
| P-96 | Pages from Associated Credit & Collection Bureau, Inc.'s website | PTB-393 to PTB-397 |
| **Trans Union, LLC's Documents** | | |
| P-97 | Trans Union, LLC's Responses to Plaintiff's Interrogatories | PTB-398 to PTB-409 |
| P-98 | Trans Union's Rule 26 Disclosures – listing documents | PTB-410 to PTB-412 |
| P-99 | CRS Summary input screens | PTB-413 to PTB-418 |
| P-100 | Truelink input screens | PTB-419 to PTB-420 |
| P-101 | Apr. 7, 2007 CRS Disclosure input screens | PTB-421 to PTB-424 |
| P-102 | Apr. 7, 2007 Plaintiff's Trans Union credit report | PTB-425 to PTB-432 |
| P-103 | May 8, 2007 Plaintiff's dispute letter to Trans Union | PTB-433 to PTB-440 |
| P-104 | May 11, 2007 CRS Credit Life input screen | PTB-441 |
| P-105 | May 11, 2007 Plaintiff's Trans Union credit report | PTB-442 to PTB-449 |
| P-106 | May 11, 2007 CRS Maintenance input screens | PTB-450 to PTB-453 |
| P-107 | May 12, 2007 ACDV response from ACCB with CRS records | PTB-454 to PTB-456 |
| P-108 | May 15, 2007 CRS corrected copy input screen | PTB-457 |
| P-109 | May 15, 2007 Plaintiff's Trans Union investigation results | PTB-458 to PTB-465 |
| P-110 | Dec. 12, 2007 Plaintiff's dispute letter to Trans Union | PTB-466 to PTB-472 |
| P-110 | Dec. 14, 2007 CRS Credit Life input screen | PTB-473 |
| P-111 | Dec. 14, 2007 Plaintiff's Trans Union credit report | PTB-474 to PTB-482 |
| P-112 | Dec. 14, 2007 CRS Maintenance input screens | PTB-483 to PTB-486 |
| P-113 | Dec. 15, 2007 ACDV response from ACCB with CRS record | PTB-487 to PTB-489 |
| P-114 | Jan. 9, 2008 CRS corrected copy input screen | PTB-490 |
| P-115 | Jan. 9, 2008 Plaintiff's Trans Union investigation results | PTB-491 to PTB-499 |
| P-116 | May 23, 2008 Email dispute from First Advantage Credco | PTB-500 |
| P-117 | May 29, 2008 CRS Credit Life input screen | PTB-501 |
| P-118 | May 29, 2008 Plaintiff's Trans Union credit report | PTB-502 to PTB-510 |

Case 2:09-cv-00646-TJS   Document 58   Filed 01/29/10   Page 12 of 18

| | | |
|---|---|---|
| P-119 | May 22, 2008 Plaintiff's dispute letter to Trans Union | PTB-511 to PTB-516 |
| P-120 | May 30, 2008 CRS Letter input screen | PTB-517 |
| P-121 | May 30, 2008 ACDV response from ACCB with CRS record | PTB-518 to PTB-520 |
| P-121 | June 24, 2008 CRS corrected copy input screen | PTB-521 |
| P-122 | May 30, 2008 Trans Union letter to First Advantage Credco | PTB-522 |
| P-123 | June 24, 2008 Plaintiff's Trans Union investigation results | PTB-523 to PTB-525 |
| P-124 | July 29, 2008 CRS Disclosure input screen | PTB-526 |
| P-125 | July 31, 2008 Trans Union letter to Plaintiff | PTB-527 |
| P-126 | July 29, 2008 CRS Disclosure input screen | PTB-528 |
| P-127 | July 31, 2008 Plaintiff's Trans Union credit report | PTB-529 to PTB-536 |
| P-128 | July 31, 2008 CRS Letter input screen | PTB-537 |
| P-129 | July 28, 2008 Plaintiff's dispute letter to Trans Union | PTB-538 to PTB-546 |
| P-130 | July 31, 2008 Trans Union letter to Plaintiff | PTB-547 |
| P-131 | Aug. 11, 2008 CRS Disclosure input screens | PTB-548 to PTB-549 |
| P-132 | Aug. 12, 2008 Plaintiff's Trans Union credit report | PTB-550 to PTB-559 |
| P-133 | Aug. 11, 2008 Scanned Plaintiff's dispute letter to Trans Union | PTB-560 to PTB-572 |
| P-134 | Aug. 12, 2008 CRS Letter input screen | PTB-573 |
| P-135 | Aug. 12, 2008 Trans Union letter to Plaintiff | PTB-574 |
| P-136 | Aug. 12, 2008 CRS Comment input screen | PTB-575 |
| P-137 | Jan. 26, 2009 Truelink input screens | PTB-576 to PTB-577 |
| P-138 | Jan. 26, 2009 CRS Disclosure input screens | PTB-578 to PTB-581 |
| P-139 | Jan. 26, 2009 Plaintiff's Trans Union credit report | PTB-582 to PTB-591 |
| P-140 | Trans Union LLC's Supplemental Rule 26 Disclosures – listing documents | PTB-592 to PTB-593 |
| P-141 | CRS Summary input screens | PTB-594 to PTB-598 |
| P-142 | Jan. 15, 2002 CRS Credit Life input screen | PTB-599 |
| P-143 | Jan. 15, 2002 Plaintiff's Trans Union credit report | PTB-600 to PTB-603 |
| P-144 | Jan. 15, 2002 CRS Maintenance input screens | PTB-604 to PTB-607 |
| P-145 | Jan. 15, 2002 CRS Corrected copy input screen | PTB-608 |
| P-146 | Jan. 15, 2002 Plaintiff's Trans Union credit report | PTB-609 to PTB-612 |
| P-147 | Jan. 15, 2002 CRS Letter input screen | PTB-613 |
| P-148 | Jan. 15, 2002 Trans Union letter to Plaintiff | PTB-614 |
| P-149 | Mar. 26, 2002 CRS Credit Life input screen | PTB-615 |
| P-150 | Mar. 26, 2002 Plaintiff's Trans Union credit report | PTB-616 to PTB-619 |
| P-151 | Mar. 26, 2002 CRS Letter input screen | PTB-620 |
| P-152 | Mar. 26, 2002 Trans Union letter to Plaintiff | PTB-621 |
| P-153 | Mar. 26, 2002 CRS Dispute Line Item input screens | PTB-622 to PTB-623 |
| P-154 | Mar. 29, 2002 CRS Corrected copy input screen | PTB-624 |

12

| P-155 | Mar. 29, 2002 Plaintiff's Trans Union investigation results | PTB-625 to PTB-628 |
|---|---|---|
| P-156 | Sept. 6, 2002 CRS Disclosure input screens | PTB-629 to PTB-630 |
| P-157 | Sept. 10, 2002 CRS Letter input screen | PTB-631 |
| P-158 | Sept. 10, 2002 Trans Union letter to Plaintiff | PTB-632 to PTB-633 |
| P-159 | Sept. 25, 2002 CRS Disclosure input screens | PTB-634 to PTB-635 |
| P-160 | Sept. 25, 2002 Plaintiff's Trans Union credit report | PTB-636 to PTB-639 |
| P-161 | Oct. 8, 2002 CRS Maintenance input screens | PTB-640 to PTB-643 |
| P-162 | Oct. 8, 2002 CRS Letter input screen | PTB-644 |
| P-163 | Oct. 8, 2002 Trans Union letter to Plaintiff | PTB-645 |
| P-164 | Oct. 8, 2002 CRS Comment input screen | PTB-646 |
| P-165 | Oct. 8, 2002 CRS Dispute Line Item input screens | PTB-647 to PTB-650 |
| P-166 | Oct. 24, 2002 CRS Corrected copy input screen | PTB-651 |
| P-167 | Oct. 24, 2002 Plaintiff's Trans Union investigation results | PTB-652 to PTB-655 |
| P-168 | May 30, 2003 Plaintiff's dispute letter to Trans Union | PTB-656 to PTB-657 |
| P-169 | May 29, 2003 CRS Disclosure input screens | PTB-658 to PTB-659 |
| P-170 | May 30, 2003 Plaintiff's Trans Union credit report | PTB-660 to PTB-663 |
| P-170 | May 30, 2003 CRS Letter input screen | PTB-664 |
| P-171 | May 30, 2003 Trans Union letter to Plaintiff | PTB-665 |
| P-172 | Dec. 16, 2003 CRS Credit Life input screen | PTB-666 |
| P-173 | Dec. 16, 2003 Plaintiff's Trans Union credit report | PTB-667 to PTB-670 |
| P-174 | Dec. 16, 2003 CRS Maintenance input screens | PTB-671 to PTB-674 |
| P-175 | Dec. 16, 2003 CRS Corrected copy input screen | PTB-675 |
| P-176 | Dec. 16, 2003 Plaintiff's Trans Union investigation results | PTB-676 to PTB-680 |
| P-177 | Dec. 16, 2003 CRS Disclosure input screens | PTB-681 to PTB-682 |
| P-178 | Dec. 16, 2003 Plaintiff's Trans Union credit report | PTB-683 to PTB-687 |
| P-179 | Apr. 23, 2004 CRS Disclosure input screens | PTB-688 to PTB-689 |
| P-180 | Trans Union's financial documents | |
| **Gateway Funding's Documents** | | |
| P-181 | Sept. 16, 2009 Jarred Nelson's Declaration | PTB-690 to PTB-693 |
| P-182 | June 5, 2009 Jarred Nelson letter to Plaintiff | PTB-693 |
| **Subpoenaed Documents** | | |
| P-183 | May 27, 2009 Trans Union subpoena to Gateway Funding with responsive documents | PTB-694 to PTB-750 |
| P-184 | May 27, 2009 Trans Union subpoena to Capital One Bank with responsive documents | PTB-751 to PTB-799 |
| P-185 | May 27, 2009 Trans Union subpoena to FCC Finance LLC with responsive documents | PTB-800 to PTB-827 |
| P-186 | May 27, 2009 Trans Union subpoena to Power Windows and Siding, Inc. with responsive documents | PTB-828 to PTB-841 |

| | | |
|---|---|---|
| P-187 | May 27, 2009 Trans Union subpoena to Wells Fargo Financial National Bank with responsive documents | PTB-842 to PTB-851 |

Additionally, Plaintiff reserves the right to also rely upon and enter into evidence any exhibits identified by the Defendants.

## VI.    TRIAL TIME

Plaintiff estimates that the entire trial should last 4 to 5 days.

## VII.   USE OF VIDEO / DVD

If ACCB's out-of-town witnesses do not appear for trial, Plaintiff intends on playing the entire DVDs of their deposition testimonies.  These witnesses are Thomas Dreher, Dawn D. Eddy and Derek B. Cole.

## VIII.  STIPULATIONS

The parties are conferring to discuss what issues they can present to the jury via stipulation.

## IX.    OBJECTIONS TO DEFENDANT'S TRIAL EXHIBITS

Plaintiff cannot meaningfully identify her objections to Defendants' exhibits because she does not know Defendants' proffers.  For example, select exhibits maybe irrelevant, or redundant, depending on the proffer.  Plaintiff may also challenge other documents on authenticity, hearsay, or other grounds depending on the proffer.  For example, Plaintiff would make such objections if Defendants here were to offer certain exhibits or testimony to suggest that Plaintiff ever had a legitimate and proper "collection account" or, in fact, owed $690 to Awbury Park Apartments.

## X.     SPECIAL ISSUES

Plaintiff intends to present certain demonstrative evidence at trial using equipment such as a document camera or projector with an overhead screen.  Plaintiff would desire to coordinate

such presentation with court staff and/or to use court equipment, and respectfully requests direction from the Court as to how to set up such projector and/or overhead screen presentation.

## XI. LEGAL ISSUES

### A. Associated Credit and Collections Bureau, Inc.

The central legal issue with respect to ACCB is whether this Defendant failed in its duty to investigate and correct the inaccurate $690 collection account following Plaintiff's repeated disputes.

Under the FCRA, after being notified by a consumer reporting agency about the Plaintiff's dispute, ACCB was required to:

(1) conduct a reasonable investigation with respect to the disputed information;

(2) review all relevant information provided to ACCB by the credit bureaus;

(3) report the results of the investigation to the credit bureaus; and

(4) report any change to all three major credit bureaus if its investigation finds that the information is incomplete or inaccurate.

ACCB was required to conduct a reasonable investigation; not merely a brief review of its computer records. *See Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Bruce v. First U.S.A. Bank, Nat. Ass'n.,* 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000). *See also* 15 U.S.C. 1681s-2(b); *Agosta v. Inovision, Inc.*, 2003 WL 22999213, at *5 (E.D. Pa. Dec. 16, 2003); *Evantash v. G.E. Capital Mortg. Servs., Inc.*, 2003 WL 22844198, at *6 (E.D. Pa. Nov. 25, 2003).

As an entity that collects debts for another, ACCB was required to report only accurate credit information, and violated FDCPA section 1692e(8) and its Pennsylvania state analogue (73 P.S. § 2270.4(a), § 2270.4(b)(5)(viii), which is enforceable via the Pennsylvania CPL) when

15

it "communicated or threatened to communicate to any person credit information which is known or which should be known to be false."

### B. Chancellor Properties, Inc.

CP has similar legal duties as ACCB, as summarized above.

### C. Trans Union, LLC

With respect to TU, the threshold central legal issue in this case is whether this Defendant maintained Plaintiff's credit file with procedures that assured "maximum possible accuracy," as required by section 1681e(b) of the FCRA. In order to establish a negligent violation of FCRA section 1681e(b), a plaintiff must show that:

(1)   inaccurate information was included in the Plaintiff's credit report;

(2)   the inaccuracy was due to the agency's failure to follow reasonable procedures;

(3)   the Plaintiff suffered injury; and

(4)   the Plaintiff's injury was caused by the inclusion of the inaccurate entry.

*Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d. Cir. 1996). Only elements (1) and (2) are required in order for a plaintiff to establish a willful violation of FCRA section 1681e(b). *See* 15 U.S.C. § 1681n.

A second central issue is whether TU properly investigated and responded to Plaintiff's disputes that his credit file contained inaccurate information. If the completeness or accuracy of any item of information contained in a consumer's credit file is disputed by the consumer, and the consumer notifies the agency of the dispute, the agency shall:

(1)   reinvestigate the disputed information free of charge;

(2)   provide notice of the dispute to the person who provided the information, along with all relevant information regarding the dispute received by the consumer; and

16

(3) review and consider all relevant information submitted by the consumer in connection with the dispute.

If, after the reinvestigation, an item of information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete the item of information from the consumer's credit file or modify that item of information as appropriate based upon the results of the reinvestigation.  15 U.S.C. §1681i; *Cushman v. Trans Union Corp.,* 115 F. 3d 220, 225 (3d. Cir. 1997).

Plaintiff will supplement these statements of law with proposed points for charge, which will be filed under separate cover as provided in the Court's Scheduling Order.

This Pretrial Memorandum is:

                                    Respectfully submitted,

                                    **FRANCIS & MAILMAN, P.C.**

BY:   */s/ John Soumilas*
        JOHN SOUMILAS
        GEOFFREY H. BASKERVILLE
        Attorneys for Plaintiff
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, PA 19110
        (215) 735-8600

Dated: January 29, 2010

## CERTIFICATE OF SERVICE

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of the foregoing Plaintiff's Pretrial Memorandum to be served electronically in accordance with this Court's ECF procedures, upon the following individuals:

Bruce S. Luckman, Esquire
Christopher N. Jones, Esquire
Timothy P. Creech, Esquire
Kogan, Trichon & Wertheimer, P.C.
1818 Market Street, 30th Floor
Philadelphia, PA 19103
bluckman@mstkw.com
cjones@mstkw.com
tcreech@mstkw.com

Paul J. Cohen, Esquire
Lawrence H. Fisher, Esquire
Cohen & Willwerth, P.C.
660 Second Street Pike
Southampton, PA 18966
paul@cohenwillwerth.com
lawfirst@comcast.net

Richard J. Perr, Esquire
Fineman, Krekstein & Harris, P.C.
Mellon Bank Building
1735 Market Street, Suite 600
Philadelphia, PA 19103
rperr@finemanlawfirm.com

Andrew M. Schwartz, Esquire
Dean H. Malik, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin, P.C.
1845 Walnut Street
Philadelphia, PA 19103-4797
aschwartz@mdwcg.com
dhmalik@mdwcg.com

**FRANCIS & MAILMAN, P.C.**

BY: _/s/ John Soumilas_
JOHN SOUMILAS
Attorney for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Dated: January 29, 2010