**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMEN DIXON-ROLLINS** | ) | |
| | ) | **Civil Action No.  09-646** |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | |
| **TRANS UNION, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

AND  NOW,  upon  consideration  of  Plaintiff's  Motion  for  Judgment  in  her  Favor,
Inclusive  of  an  Award  of  Attorneys'  Fees  and  Reimbursement  of  Costs  and  Expenses  from
Defendant Trans Union, LLC, along with Post-Judgment Interest, and Memorandum of Law in
support thereof, and any response thereto,

IT IS, this _____ day of _____, 2010, HEREBY ORDERED that the Motion
is GRANTED.   Plaintiff is awarded attorneys' fees in the total amount of $_____
and reimbursement of costs in the total amount of $_____.    Judgment  is  entered  in
favor of Plaintiff and against Defendant Trans Union, LLC in the amount of the jury verdict of
$530,000 plus the reasonable attorney fees and costs approved herein, for a total judgment of
$_____.  If for any reason said judgment is not paid by Defendant Trans Union,
LLC to Plaintiff Dixon-Rollins within 30 days, interest shall accrue on said judgment at a rate of
____% until the time for any appeal is exhausted.

BY THE COURT:

_____
SAVAGE,                                     U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARMEN DIXON-ROLLINS** )<br>)<br>**Plaintiff,** )<br>**vs.** )<br>)<br>**TRANS UNION, LLC** )<br>)<br>**Defendant.** )<br>) | **Civil Action No. 09-646** |

**PLAINTIFF CARMON DIXON-ROLLINS' MOTION FOR JUDGMENT IN
HER FAVOR, INCLUSIVE OF AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS AND EXPENSES, ALONG WITH
POST-JUDGMENT INTEREST, FROM DEFENDANT TRANS UNION, LLC**

Plaintiff Carmon Dixon-Rollins, through her counsel, hereby moves pursuant to the fee shifting provision of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* for an award of attorneys' fees and reimbursement of costs ("Motion" or "Fee Petition"). Additionally, Plaintiff moves to have the Court enter Judgment on the verdict in this matter including the fees and costs awarded. Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961.

The Motion demonstrates that Plaintiff is entitled to an award of attorneys' fees in the amount of $136,833.84 and reimbursement of costs and expenses in the amount of $6,391.34. Since Plaintiff already has a $530,000 jury verdict in her favor (Docket No. 91), the total judgment that Plaintiff seeks to be entered in her favor is for $673,225.18. For the reasons set

forth more fully in the accompanying Memorandum of Law and supporting papers, which are incorporated by reference herein, Plaintiff's Motion should be granted.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

By:      /s/ *John Soumilas*
         MARK D. MAILMAN
         JOHN SOUMILAS
         GEOFFREY H. BASKERVILLE
         Attorneys for the Plaintiff
         Land Title Building, 19th Floor
         100 South Broad Street
         Philadelphia, PA  19110
Dated: April 9, 2010            (215) 735-8600

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARMEN DIXON-ROLLINS** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 09-646** |
| **vs.** ) | |
| ) | |
| **TRANS UNION, LLC** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR JUDGMENT IN HER FAVOR, INCLUSIVE OF AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF COSTS AND EXPENSES, ALONG WITH POST-
JUDGMENT INTEREST, FROM DEFENDANT TRANS UNION, LLC**

Plaintiff Carmon Dixon-Rollins, through counsel, respectfully submits this Memorandum

of Law in support of her Motion Judgment in Her Favor, Inclusive of an Award of Attorneys'

Fees and Reimbursement of Costs and Expenses, along with Post-Judgment Interest, from

Defendant Trans Union, LLC (Fee Petition).

**I.      INTRODUCTION**

This Fee Petition follows a little over a year of litigation and a jury trial held on March 4,

2010 and March 8, 2010 at which Plaintiff prevailed.[1]  The jury returned a verdict of $530,000 in

favor of Plaintiff and against Trans Union -- $30,000 in actual damages and $500,000 in punitive

damages.  (*See* Docket No. 91).  Plaintiff seeks an award of attorneys' fees in the amount of

$136,833.84 and costs in the amount of $6,391.34.[2]  Thus, Plaintiff seeks judgment in her favor

---

[1]      The Fair Credit Reporting Act mandates the award of reasonable attorney's fees and costs to the consumer in the case of any successful action.  *See* 15 U.S.C. §§ 1681n(a)(3) & 1681o(a)(2).  Additionally, Plaintiff moves for the reimbursement of cost and expenses "as of course" pursuant to Fed. R. Civ. P. 54(d)(1).

[2]      The fees and costs sought by Plaintiff are for time and expenses reasonably expended for the prosecution of her case against Trans Union only.  As detailed below and in the time records

in the total amount of $673,225.18, and also seeks post-judgment interest in the event that Trans Union fails to pay the judgment within 30 days.

In support of her present Fee Petition, Plaintiff submits the Declaration of Mark D. Mailman, which is appended hereto as Appendix 1 (Mailman Declaration or Mailman Decl.). The Mailman Declaration is supported by detailed schedules of time and expenses for each attorney and paralegal who worked on this case (Exhibits A and B, thereto, respectively); the declarations of Philadelphia attorneys who are familiar with the skill and experience of Plaintiff's counsel and Philadelphia market billing rates, and who support the hourly rates charged by Plaintiff's counsel in this case (Exhibit C, thereto); and a firm biography outlining the background of Plaintiff's firm and its attorneys (Exhibit D, thereto).

Based upon the Memorandum of Law and exhibits in support thereof, Plaintiff should be awarded the full amount of the reasonable attorneys' fees and costs sought. The total for the attorney's fees sought by Plaintiff represents the lodestar of Plaintiff's counsel, based upon hourly rates which are at or below the current market rate for legal services in the greater Philadelphia market ($124,394.40), an enhancer of 10% ($12,439.44) as well as the actual costs of the litigation attributable to Trans Union ($6,391.34). The Fee Petition and time records explicitly deduct time that was spent in the prosecution of claims against other Defendants. Thus, the total judgment to be entered in Plaintiff's favor should be in the amount of $673,225.18.

---

attached hereto, Plaintiff's counsel has cut nearly every time entry and cost to reflect only the portion of those expenditures that reasonably relate to Trans Union.

## II.   BACKGROUND

### A.   Nature Of Action

This was an action for damages brought by an individual consumer against Trans Union for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, *as amended*. One of the "Big Three" credit reporting agencies in the world, Trans Union fought this case vigorously at every turn, and it continues to.  It challenged virtually all of Plaintiff's evidence, moving to strike or preclude most exhibits, most witnesses, and even Plaintiff's own testimony. Trans Union even objected to the use at trial of credit reports and documents that it produced or subpoenaed during discovery.  Plaintiff was successful at summary judgment and at trial, and she should be awarded 100% of the actual time and costs expended by her counsel in prosecuting this consumer case against Trans Union.

Trans Union litigated this fee-shifting case without any regard for economy.  It never made any serious settlement offer, even through trial.  While it was free to embrace such a litigation strategy, it must now bear the responsibility for its recalcitrant defense.  Trans Union's approach calls to mind an observation made by the Fifth Circuit in a case brought under a related federal fee-shifting consumer statute (The Truth-In-Lending Act) where significant time was expended by plaintiff's counsel as a result of the defendant's stalwart defense:

> although defendants are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).  After fighting at every turn, and then losing, Trans Union must now bear the same cost as the defendant in *McGowan*.

### B.     Summary of Claim

The gravamen of Plaintiff Carmon Dixon-Rollins' claim was that Defendant did not properly investigate Plaintiff's disputes concerning an inaccurate $690 collection account that was reporting on her Trans Union credit report.   Over the course of several years, Plaintiff disputed to Trans Union on five separate occasions, providing Trans Union with detailed written explanations of her dispute, lists of individuals with information about her dispute and documents to support her claims.   Trans Union did nothing more than a cursory, automated "investigation" into Plaintiff's disputes and, in at least two instances, did not even bother to investigate Plaintiff's dispute at all.   Further, Trans Union never contacted any of the individuals identified by Plaintiff and never forwarded any of Plaintiff's documents on to the debt collector or any third party who could have aided in the investigation.   In short, Trans Union willfully refused to stop its inaccurate credit reporting, despite multiple disputes, or to provide Plaintiff with a corrected copy of her credit report.

As a result of Trans Union's conduct, Mrs. Dixon-Rollins was forced to pay an additional half point on the refinancing of her mortgage, lost credit opportunities (such as replacement windows), had her good credit reputation tarnished, and suffered significant humiliation, embarrassment, anxiety and other emotional distress.

### C.     Investigation And Complaint

As reflected in the contemporaneously-maintained time records of Plaintiff's counsel, Francis & Mailman, P.C. (F&M), Plaintiff's counsel began its investigation in this matter in February of 2009.  (*See* Mailman Decl. at Exhibit A).  Plaintiff's counsel conducted a normal amount of factual and legal research as part of their background investigation into this matter. Counsel spoke to Plaintiff at length about the underlying events giving rise to her problem, the

credit bureaus' reporting of the account at issue, her dispute history and the impact that the inaccurate reporting had on Plaintiff's life, reviewed documents provided by Plaintiff and analyzed her claims.  (*See* Mailman Decl.).    The Complaint was filed on February 16, 2009, against Trans Union, another national credit reporting agency, Experian, and Associated Credit and Collections Bureau, a debt collector.    Plaintiff subsequently filed an Amended Complaint on June 22, 2009, adding Chancellor Properties and Awbury Park Apartments as defendants.

####     D.    Written Discovery

After the initial pleadings, the parties conducted written discovery, including preparing, serving and responding to interrogatories and document requests.  As can be gleaned from the binder of documents that ended up being marked by Plaintiff as proposed trial exhibits (P-1 through P-187), the documents in this type of a case can be lengthy and complex, and they were in this case.  A proper understanding of these documents requires a careful reading, and understanding of the significance of tradelines, furnisher updates, inquiries, account reviews, promotional inquiries, credit scores, and other financial and credit factors.  Additionally, various subpoenas were served on third party to whom Plaintiff had applied for credit.  These records also had to be carefully reviewed and analyzed.  The F&M firm's time-records reflect the appropriate amount of time needed for such a review and for written discovery.  (*See* Mailman Decl. at Exhibit A).

####     E.    Depositions

The parties then went on to take and defend nine depositions.  Plaintiff was deposed on September 22, 2009.  Trans Union's corporate representative, Steven Newnom, was deposed on September 30, 2009.  Two representative from Chancellor Properties, Christy Williams and Charlene Halicki, were deposed on October 26, 2009.  The corporate representative for ACCB,

Thomas Dreher, was deposed on October 1, 2009 and two ACCB employees, Dawn Eddy and Derrick Cole, were deposed on October 2, 2009.   Jarred M. Nelson, the manager at Gateway Funding, the mortgage company through which Plaintiff refinanced her home, was deposed on October 8, 2009.   Finally, Plaintiff's proposed expert, Tomas J. Norton, was deposed on November 4, 2009.   These depositions were properly pursued and the time-records reflect the accurate and reasonable preparation and deposition time spent.  (*See* Mailman Decl.).

### F.   Motions

Trans Union and ACCB filed a motion for summary judgment.   Additionally Trans Union and Chancellor filed a motion to exclude Plaintiff's expert.  (*See* Docket at Nos. 41, 42). Plaintiff responded in detail to all of these motions.  (*See* Docket at Nos. 44, 45).   The summary judgment briefing was a particularly time-intensive portion of the case.   Notably, many of Trans Union's arguments contested legal rulings it had unsuccessfully challenged in our District and Circuit on other occasions (such as its argument that Plaintiff could not recover emotional distress damages in an FCRA case).[3]

As the case approached the trial date of February 25, 2010, Trans Union filed a motion *in limine* on ten different subject areas challenging a wide range of exhibits and legal claims. Indeed, Trans Union's motion *in limine* resembled a second motion for summary judgment  (*See* Docket at No. 68).  Plaintiff again responded in detail to Trans Union's motion.  (*See* Docket at

---

[3]      *See, e.g., Cushman v. Trans Union Corp.,* 115 F.3d 220, 225-27 (3d Cir. 1997) (actual damages may be emotional in nature); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Lukens v. Dunphy Nissan, Inc.*, Civ. No. 03-767, 2004 WL 1661220 at * 5 (E.D. Pa. Jul. 26, 2004); *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582 (E.D. Pa. 2003) (Brody, J.); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311 (E.D. Pa. 2003) (Dalzell, J.); *Evantash v. G.E. Capital Mortgage Servs., Inc.*, Civ. No. 02-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) (Davis, J.); *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) (Schiller, J.); *Abusaab v. Equifax Information Services, LLC*, C.A. No. 05-5094, 2006 WL 1214782 (Bartle, C.J.).

No. 74).   Both Trans Union's motion for summary judgment and motion *in limine* failed, although some evidence and one witness were excluded from trial.

### G.   Settlement Conference

Counsel prepared for and attended, along with Mrs. Dixon-Rollins, a settlement conference before the Honorable Felipe Restrepo.   During this conference, counsel negotiated the matter in good faith for several hours.   Despite their detailed meetings with Magistrate Judge Restrepo, the parties were unable to reach a settlement.

### H.   *Daubert* Hearing

At the request of Trans Union and Chancellor, through two of the aforementioned motions and an in-court appearance in connection with the same, this Court held a *Daubert* hearing regarding the qualifications of Plaintiff's banking expert, Tomas J. Norton, on January 26, 2010.   Plaintiff's counsel prepared for and attended the Daubert hearing with Mr. Norton.   At the final pre-trial conference held in this matter, Plaintiff withdrew her proffer of Mr. Norton as an expert witness for tactical reasons.

### I.   Other Pretrial Motions and Submissions

Plaintiff also filed a number of pretrial submissions, such as her Pretrial Memorandum, Proposed Jury Interrogatories, and Proposed Points for Charge.   (*See* Docket at Nos. 58, 72, 73).   Plaintiff's counsel also worked with Trans Union's counsel on a Joint Trial Exhibit List and Joint Voir Dire.   Plaintiff conducted regular trial preparation, including the drafting of opening statements and closing arguments, reviewing and analyzing exhibits, preparing for the examination of witnesses, preparing evidentiary arguments, etc.   Counsel also needed to prepare for and attend the final pretrial conference.   The reasonable amount of time that Plaintiff's

counsel spent on these matters is set forth in detail in the time-records attached as Exhibit "A" to the Mailman Declaration.

### J.    Trial and Trial Preparation

The trial began on March 4, 2010 and concluded with the $530,000 jury verdict on March 8, 2010.  Although Trans Union had two attorneys at counsel table, Plaintiff tried the case with only one attorney at trial, John Soumilas.  Mr. Soumilas had the assistance of one paralegal in the courtroom each day of trial, Danielle Spang, and, in Ms. Spang's planned absence on March 8, 2010, Alicia Bungy.  He also received support from other attorneys and staff in his office in the form of legal research and submissions, strategy discussions, and other matters, as reflected in detail in the F&M time records.  (*See* Mailman Decl. at ¶ 2 and Exhibit A); (*See* Docket at Nos. 89, 92).  That time was reasonably expended.

Trial preparation was standard for any trial of this nature.  The F&M time-records show in detail the firm's time that was reasonable spent in preparing and selecting exhibits and witnesses, conducting research, refining litigation strategy, drafting legal memoranda, and other reasonable trial preparation that went into this matter.  (*See* Mailman Decl.); (*See* Docket at Nos. 58, 72-74, 77).

### J.    Fee Petition

Plaintiff has included in this submission counsel's time spent in preparing the instant Fee Petition.  The parties anticipate that Trans Union will oppose the Fee Petition, and that as a result Plaintiff will also need to file a reply brief.  Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application.  *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978); *see Becker v. ARCO Chemical Co.*, 15 F. Supp. 2d 621 (E.D. Pa. 1998) (counsel

awarded compensation for 64.1 hours spent on fee petition).   Plaintiff here seeks reimbursement of approximately 20 attorney hours and 6 paralegal hours for preparing this Fee Petition.

### K.   Expenses

The costs expended by counsel are detailed in the Mailman Declaration and Exhibit B, thereto.

### L.   Time Excluded

As the Court knows, Plaintiff originally brought this case against Trans Union and Experian Information Solutions (two national credit bureaus), Associated Credit and Collections (a debt collector), Chancellor Properties (a property management company) and Awbury Park Apartments, which went out of business and could never be served.  Experian settled at an early stage of the litigation.   ACCB and Chancellor settled after summary judgment.   Although Plaintiff's counsel submits all of its time records for this Court's review, they seek reimbursement for only the portion of time and expenses that were reasonably incurred in prosecuting the case against Trans Union.

In the table below, Plaintiff has set forth the categories of work performed in this case and the amount of time charged to Trans Union.  In many instances the work performed would have been done if Trans Union was the only defendant in this case.   Nonetheless, Plaintiff's counsel has made a reduction in their hours to reflect the presence of other defendants in the case.  For example, Plaintiff's counsel has been adjusted the time in the categories for "Initial Investigation & Pleadings" and "Disclosures, Rule 16 Conference" by 50%  to reflect time spent as to other Defendants even though the work in these areas would have been performed even if Trans Union was the only defendant in the case.  Additionally, Trans Union made accuracy and the reasonableness of its "investigations" defenses in this case.  Therefore, Plaintiff was required

9

to develop evidence to show that Trans Union's reporting was inaccurate and that its investigations were unreasonable.   Thus a substantial portion of Plaintiff's discovery and depositions of the Defendants other than Trans Union was essential to Plaintiff's case against Trans Union.   Nevertheless, Plaintiff's counsel has reduced their time in these categories by two-thirds to reflect their minimum amount of time attributable to Trans Union.   Further, while Plaintiff's counsel reasonably believes that they are entitled to recover for the time and costs related to their proposed expert witness, Tomas Norton, there is no time or costs charged at all related to Mr. Norton because of Plaintiff's decision not to present Mr. Norton as a witness at trial.   The time records attached as Exhibit A and the costs records attached as Exhibit B to the Mailman Declaration are marked up to reflect those and other deductions that Plaintiff has made for purposes of this Fee Petition.

| Category of Time | Percent Charged to TU |
|---|---|
| Case Investigation & Pleadings | 50% |
| Disclosures, Rule 16 Conference | 50% |
| Written Discovery as to TU | 100% |
| Written Discovery as to Other Defendants | 33.3% |
| Third Party Discovery | 100% |
| Plaintiff's & TU's Depositions | 100% |
| Depositions of Other Defendants | 33.3% |
| Nelson Deposition | 100% |
| Summary Judgment | 50% |
| Expert, Daubert Motion and Hearing | 0% |
| Settlement & Pretrial | 50% |
| TU Pretrial Briefing re: Motion *in Limine* and Other Pretrial Submissions | 100% |
| Trial Preparation | 100% |
| Trial | 100% |
| Post-trial & Fee Petition | 100% |

## III.   ARGUMENT

In an FCRA matter, the plaintiff shall recover "the costs of the action together with reasonable attorney's fees" in "the case of any successful action to enforce liability."  15 U.S.C.

§§ 1681n(a)(3) & o(a)(2).  After prevailing at trial, there can be no doubt that Plaintiff was very successful in this litigation in enforcing liability under the FCRA.

As far as consumer actions are concerned, the recovery in terms of attorneys' fees and costs can be, and often is, considerably higher then the underlying money damages recovered. *See Bryant v. TRW Inc.,* 689 F.2d 72, 80 (6th Cir. 1982) (upholding FCRA award of $8,000 and attorney's fee award of $13,705); *see also Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986) (no proportionality necessary between damages and fee award in fee-shifting case; finding that $245,456.25 fee award was appropriate in case where total damages were $33,350).[4]  By contrast, in the case at bar, the jury awarded Plaintiff a significant amount of compensatory and punitive damages, approximately four times the amount of her attorneys' fees and costs.  Those fees and costs were reasonably incurred by Plaintiff in battling Trans Union's hard-fought defense of this case.  They must now be paid by Trans Union.

A.      **A Lodestar Analysis Confirms That The Fee Requested Is Reasonable**

According to the U.S. Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The

---

[4]      *See also Sheffer v. Experian*, 290 F. Supp. 2d 538, 553 (E.D. Pa. 2003) ($32,588.66 in fees and cost awarded in $1,000 verdict FCRA case); *Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536, 547 (E.D. Pa. 1996) ($87,821.48 in attorney's fees and costs in impermissible access FCRA cases that settled confidentially, with fees and costs component to be left up to court in fee petition).  Both Congress and the courts have acknowledged this reality, deputizing private attorneys as "private attorneys general" and making it economically possible for them, through the fee-shifting provisions of several federal statutes, to vindicate consumer rights even in cases where the actual damages may be very low.  *See Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79-80 (6th Cir. 1982) (Congress intended the "private attorney general concept" to apply to the FCRA).

result of that calculation is called the lodestar; the lodestar is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The lodestar analysis is generally considered the appropriate method of determining attorneys' fees in federal consumer protection statutory fee-shifting cases such as this case because the shifting of fees serves the public policy of encouraging private enforcement of the substantive rights created by Congress. MANUAL FOR COMPLEX LITIGATION § 24.13 (3d ed. 1995); *Sheffer v. Experian*, 290 F. Supp. 2d 538, 553 (E.D. Pa. 2003).

The lodestar and expenses for Plaintiff's counsel Francis & Mailman, P.C. here is as follows: $ 124,394.40 for attorney's fees, and costs of $ 8,546.26.  (*See* Mailman Decl.).

## 1. Plaintiff Has Excluded From This Fee Petition Time Expended On Her Claims Against Other Defendants

In preparing this request for an award of counsel fees, Plaintiff's counsel has included as Exhibit A and B to the Mailman Declaration all of its contemporaneously maintained time and cost records in this matter.  Plaintiff moves only to recover that portion of this time expended on matters related to her claims against Trans Union.  (*See* Mailman Decl. at ¶¶ 7 & 9) (*See also* Section II(L), supra).  Thus the attorneys' fees sought relate directly to counsel's efforts in prosecuting Plaintiff's action against Trans Union only.

Specifically, Plaintiff's counsel has reduced its time for activities such as conducting initial investigation, drafting pleadings, preparing initial disclosures and attending the Rule 16 conference by 50% to account for the presence of other Defendants in this matter.  This reduction is being taken even though these are all events that would have been taken even if Trans Union was the only defendant in the case.  Trans Union also defended this case by claiming that its reporting was accurate and its investigations into Plaintiff's disputes were reasonable.  Therefore, a percentage of the time spent on conducting discovery from other parties

in this case related to Trans Union's claims of accuracy and reasonable investigations.  Indeed, a witness from Chancellor Properties, a settling Defendant, testified at trial regarding these matters.  Plaintiff's counsel has reduced its time for conducting discovery and depositions of other Defendants by two-thirds to account for time that was related to Plaintiff's claims against Trans Union.  Plaintiff's counsel has also not requested reimbursement for any time or costs related to Tomas Norton, Plaintiff's proposed economic expert, because Mr. Norton was not offered as a witness at trial.

2. **Hours Expended And Sufficiency Of Lodestar Documentation**

In support of this Fee Petition, Plaintiff has submitted many pages of detailed, contemporaneously-produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks.  This submission readily meets this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (specificity required to extent necessary to determine if the hours claimed are reasonable for the work performed), *Morris v. I.C. Systems*, 2009 WL 1362594, * 3 (E.D. Pa. May 15, 2009) (finding Francis & Mailman "time sheets and affidavits…sufficiently detailed to permit determination on the reasonableness of the hours that plaintiffs' attorneys expended on these cases.").  The declaration of counsel submitted herewith also sets forth the basis for the division of labor among the attorneys and paralegals in an efficient manner.  (*See* Mailman Decl.).  There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 433.  All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff against Defendant Trans Union.

Several courts in the Eastern District of Pennsylvania have had occasion to apply the *Hensley* analysis to fee claims of prevailing parties under similar consumer protection legislation, the Truth in Lending Act (TILA).  In *Jones v. Mid-Penn Consumer Discount Co.*, 93 B.R. 66 (E.D. Pa. 1986), the late Judge Newcomer reversed a decision of the bankruptcy court that had limited fees to the time spent developing the argument which ultimately prevailed in rescinding the consumer's loan and disallowed hours expended on an alternative TILA claim. Judge Newcomer relied on the *Hensley* principle that "the ultimate success and results achieved should be the relevant guide," *Jones*, 99 B.R. at 67, and held that plaintiff's counsel was entitled to full compensation because she had obtained both rescission and a statutory damages award. The fact that the bankruptcy court had rejected a separate ground for the rescission claim was of no moment.  *Id.  See Steinbrecher v. Mid-Penn Consumer Discount Co.*, 1990 WL 117979 (E.D. Pa. 1990) (Dubois, J.) (unsuccessful usury and unfair trade practices claims were factually and legally related to successful TILA claims, so no fee reduction was called for);  *Gill v. Mid-Penn Consumer Discount Co.*, 1988 WL 107560 (E.D. Pa. Oct. 14, 1988) (Weiner, J.) (*Hensley* did not allow court to deduct hours spent on an unsuccessful alternative TILA argument).

Importantly, it was not Plaintiff's litigation tactics that increased the time necessary to prosecute this consumer protection action.  As reflected by the time-records, a very substantial bulk of Plaintiff's time was spent responding and repelling repetitive motions and over encompassing objections made by Trans Union.  Trans Union did not prevail in any significant way on these motions and objections.  Nor can it fairly argue now that Plaintiff should not have spent substantial time responding to all of the myriad objections and issues that Trans Union raised with this Court.

Finally, Trans Union cannot properly protest that Plaintiff's counsel were inefficient, redundant or wasteful in prosecuting this consumer protection action.  Attorneys John Soumilas and Geoffrey H. Baskerville litigated the bulk of this matter, and the firm's attorneys apportioned tasks and assignments to avoid duplicative work.  Depositions were handled by one attorney.  Mr. Soumilas was the firm's sole attorney at trial.  (*See* Mailman Decl. at ¶ 3).  By contrast, Trans Union had two attorneys at trial, Bruce S. Luckman and Timothy P. Creech.  Mr. Soumilas' hourly rate of $315 is lower than that of other attorneys at F&M, and as discussed below, lower than the rates charged by comparably experienced attorneys in Philadelphia.

As far as attorney's fees incurred, Plaintiff's counsel handled this matter in a streamlined and cost-effective manner.

### 3.        Hourly Rates

The hourly rates charged for Plaintiff's counsel are well within the range of what is reasonable and appropriate in the Philadelphia legal market.  (*See* Mailman Decl. at ¶ 5).

First, in support of the Mailman Declaration and hourly rates charged, Plaintiff's counsel has submitted the declarations of several attorneys in good standing who are familiar with both Philadelphia market billing rates and counsel's experience, skill and qualifications.  These declarations all support the hourly rates of Plaintiff's counsel.  (*See id.* at Exhibit C).

For example, the hourly rate charged by Mr. Soumilas is $315.  The declarations of David M. Perry, Esquire, of Blank Rome LLP and Michael B. Hayes, Esquire, of Montgomery, McCracken Walker & Rhoads, LLP confirm that Mr. Soumilas' hourly rate is at or below the appropriate rate for attorneys with comparable experience to Mr. Soumilas within the Philadelphia legal market.  (*See* Mailman Decl. at ¶ 5 and Exhibit C).  Mr. Soumilas' rate of $315 is below the market rate, and certainly within the range of acceptable rates for attorneys of

his level of experience.  Mr. Soumilas has had his $315 hourly rate approved by several courts in recent years, including by Judges Savage, O'Neill and DuBois of this District.

In support of Mr. Mailman's experience and the reasonableness of his hourly rate, Plaintiff has included a declaration from Abraham C. Reich, Co-Chair and Partner of the law firm of Fox Rothschild, LLP.  Mr. Reich has practiced law for over 30 years, and as Co-Chair and Partner of his firm, he is particularly knowledgeable regarding the applicable Philadelphia market billing rates for civil litigation in the Eastern District of Pennsylvania, as he has had direct involvement in setting and establishing the hourly rates charged by the partners and associates of Fox Rothchild, LLP.  While the Reich Declaration only attests specifically to hourly rate of James A. Francis, Plaintiff submits that it should also provide support for Mr. Mailman's hourly rate of $390 given the similarity of his experience level to Mr. Francis'.

Mr. Baskerville's hourly rates have been approved by Judge O'Neill in *Morris and Posner v. I.C. Systems, Inc., supra*.  In this matter, Mr. Baskerville's hourly rate of $340 is reasonable and in accordance with his 18 years of experience as an attorney.  Courts in this District have approved attorneys with similar experience at similar hourly rates.  *See e.g. Ciccarone v. Marchese,* 2004 WL 2966932, at *6 (E.D. Pa. Dec. 22, 2004) (approving an attorney with 15 years experience at $400) and *Phillips v. Philadelphia Housing Authority*, 2005 WL 3488872, at *6 (E.D. Pa. Dec. 20, 2005) (approving a Community Legal Services attorney with 18 years experience at $330 per hour).  Additionally, according to the Lafferty Matrix, *see infra*, an attorney of Mr. Baskerville's  experience could charge an hourly rate as high as $569. Again his actual rate of $340 per hour is very reasonable.

Second, the attorneys of Francis & Mailman, P.C. concentrate their practice in the area of consumer protection and consumer litigation, and other courts have approved similar hourly rates

of their firm in the past. *See Morris and Posner v. I.C. Systems, Inc.*, 2009 WL 1362594, at *3 (E.D. Pa. May 15, 2009) (at docket entries 51 and 52, approving F&M hourly rates); *Smith v. Chili's* C.A. No. 07-1905(E.D. Pa. Sept. 4, 2008) (at docket entry 49, approving F&M hourly rates); *Mann v. Verizon*, C.A. No. 06-5730 (E.D. Pa. Sept. 26, 2006) (at docket entry 51, approving F&M hourly rates); *Mincey v. Trans Union, LLC,* C.A. No. 05-6282 (E.D. Pa. April 19, 2006) (at docket entries 29, 30, 25, 38, 40, approving F&M hourly rates); *Perry v. FleetBoston*, 229 F.R.D. 105, 121 (E.D. Pa. 2004) (approving F&M hourly rates).[5]

Third, the hourly rates sought by Plaintiff's counsel here are consistent with rates deemed reasonable by the Third Circuit in similar contexts. *See Interfaith Community Org. v. Honeywell Inter., Inc.*, 426 F.3d 694, 708-10 (3d Cir. 2005). In *Interfaith,* the Third Circuit agreed with the petitioners that the most recently "updated" version of the Laffey Matrix could be used to determine the appropriate hourly rates in that fee-shifting case, so as to account for inflation reflected in the legal services component of the nationwide Consumer Price Index.[6] *Id.* at 710. According to that "updated" version of the Laffey Matrix, endorsed by the Third Circuit at the end of 2005, attorneys with experience comparable to Mr. Mailman would be approved at an hourly rate of $404 per hour; and attorneys with experience comparable to Mr. Soumilas would

---

[5]    The small increase to approved rates from years past, such as from the 2006 *Mincey* fee petition and 2004 *Perry* fee petition, simply reflects the reality that, as almost everything else in the U.S. economy, attorney rates have continued to increase in recent years. *See generally Interfaith Community Org. v. Honeywell Inter., Inc.,* 429 F.3d 694, 708-10 (3d Cir. 2005) (approving use of "updated" version of Laffey Matrix with increase in attorney hourly rates to keep pace with inflation); *see* Hourly Billing Rates Continue to Rise, http://www.law.com/jsp/article.jsp?1d=1134122711101, December 12, 2005; Attorney Bills Get Steeper As Law Firms Raise Hourly Rates http://www.bizjournals.com/baltimore/stories/2006/02/27/story8.html, February 24, 2006.

[6]    The *Laffey* Matrix is a widely used barometer for assessing the reasonableness of fees in "fee-shifting" cases in the Washington D.C. area reflecting attorney fee rates by years of experience and prepared by Civil Division of the United States Attorney's Office for the District of Columbia.

be approved at rates as high as $404 per hour.  *Id.* at 708.  Mr. Baskerville would be approved at rates as high as $456 per hour.  *Id.*  While the *Laffey* rates approved in *Interfaith* were primarily designed to address the Washington D.C. market, the updated figures are further indicia that the hourly rates of $390 for Mr. Mailman, $340 for Mr. Baskerville and $315 for Mr. Soumilas are reasonable.

### 4.    Costs

The Mailman Declaration demonstrates the costs that were incurred in the prosecution of this case.  (*See* Mailman Decl., at ¶¶ 8-9 and Exhibit B).  All of the costs were advanced by Plaintiff's counsel and were necessarily incurred.  Plaintiff should be awarded these unreimbursed costs, which have already been discounted to costs associated only with other Defendants and which have completely eliminated all costs related to expert witness Norton.  (*Id*).

### 5.    Preparation of Fee Petition

Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application.  *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978).  Plaintiff has included in her submission counsel's time spent in preparing the instant petition.  The time expended by counsel in preparing the Fee Petition was reasonably expended as well.  *See Becker v. ARCO Chemical Company*, 15 F. Supp. 2d 621 (E.D. Pa. 1998) (counsel awarded compensation for 64.1 hours spent on fee petition).  Plaintiff here seeks approximately 20 hours of attorney and 6 hours of paralegal time in connection with the preparation of this Fee Petition, which is reasonable and reflected on the time records.  (*See* Mailman Decl. Ex. A).

**B.      At Least A 10% Enhancement Of Plaintiff's Lodestar Is Appropriate**

As demonstrated above, Plaintiff's counsel charge rates that may be considered *lower*

than the typical hourly rate for private comparably experienced attorneys who charge by the hour

in the greater Philadelphia market.   That is unusual because, as Judge Posner of the Seventh

Circuit Court of Appeals has observed:

> A contingent fee must be *higher* than the fee for the same legal
> services as they are performed. The contingent fee compensates the
> lawyer not only for the legal services he renders, but also for the
> loan of those services. The implicit interest rate on such a loan is
> higher because the risk of default (the loss of the case, which
> cancels the debt of the client to the lawyer) is much higher than
> that of a conventional loan.

 Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added).

Similarly, federal courts within this Circuit have deemed it appropriate in certain contexts

to apply a "fee enhancement" or "delay multiplier" to account for the time-value of an attorney's

fee which is not paid in the regular course of billing, but is instead delayed by the nature of the

litigation.  *See Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992) ("In appropriate

cases, the lodestar ought to be adjusted to account for the incurred costs of the delay plaintiffs'

counsel has undergone in receiving payment"); *Blum v. Witco Chemical Corp.*, 888 F.2d 975,

977, 984-85 & n.4 (3d Cir. 1989) (upholding $14,818.63 enhancement for delay in case where

previously approved lodestar was $113,314.50; thus 13.1% total enhancement); *Institutionalized

Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 904, 923 (3d Cir.1985) (upholding 25%

enhancement for delay); *see also Horizon Unlimited, Inc. v. Silva*, Civ. No. 07-7430, 2002 WL

1896297 (E.D. Pa. Aug. 15, 2002) (approving 6% delay multiplier to fee award); *Cerva v. E.B.R.

Enterprises Inc.*, 740 F.Supp. 1099, 1107-08 (E.D. Pa. 1990) (approving 7½ to 10½% delay

multiplier to fee award); *Vargas v. Calabrese*, 750 F.Supp. 677, 685 (D.N.J. 1990) ($101,971.00

awarded as delay enhancement in matter where lodestar was $400,200.00, amounting to a 10% annual enhancement not compounded), *aff'd in relevant part and remanded in part*, 949 F.2d 665 (3d Cir. 1991)).

In *Hall*, Judge Joyner noted that although "[p]laintiffs [in that case] cited no cases holding that a delay adjustment is explicitly authorized under the FCRA, we continue to interpret this statute in accordance with other federal attorney's fees provisions for which it is well-established that we may make 'an appropriate adjustment for delay in payment.'" *Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536, 546 (E.D. Pa. 1996) (*citing Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2468, 105 L.Ed.2d 229 (1989)).  The court went on to explain that "[t]he reason for such an adjustment is to 'analogize [the fee petitioner] to a practitioner who is paid before or during the rendering of services.'" *Id.* (not making any adjustment in that case) (*citing and quoting Bolden v. SEPTA*, 897 F.Supp. 188, 192 (E.D. Pa.1995) (citations omitted)).

In the case at bar, an enhancement of the regular fee of Plaintiff's counsel is appropriate to account for the fact that Plaintiff's counsel still has not received any payment.

Further, in one of the seminal cases on fee awards, the United States Supreme Court stated that when a plaintiff receives and excellent result, his or her attorney should be fully compensated.  *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The *Hensley* court then went on to state that "in some cases of exceptional success and *enhanced award* may be justified."  *Id.* at 435 (emphasis added).

Given the above evidence concerning the time-value of money, and the exceptional success achieved by Plaintiff's counsel, an enhancer of 10% to the lodestar in this case is appropriate.  *See generally Hensley*, *supra*, and *Cerva*, 740 F. Supp. at 1106-07 ("Because a standard commercial fee would normally be paid over time, in order to be made whole, the lump

sum payment should take into account interest, inflation, and opportunity costs") (*citing Missouri v. Jenkins by Agyei*, 491 U.S. 274, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989)).[7]

Should the Court apply a 10% multiplier to the total lodestar of $124,394.40 (Mailman Decl. at ¶7), the total enhancement to Plaintiff's lodestar would be $12,439.44.   Plaintiff's proposed Order includes a total fee figure which includes an enhancement calculated at 10% of the regular lodestar ($136,833.84).

### C.    Proportionality Is Not Appropriate in Assessing A Fee Request In A Consumer Protection Case Such As This One

Some courts have raised a concern in consumer protection cases as to whether the requested fee is reasonable in light of the sometimes small amount of the sums recovered for a plaintiff.  Given the $530,000 verdict in this case, proportionality is simply not an issue here.  In a case where Plaintiff conceded that she had relatively small economic damages, the $530,000 verdict cannot be seen as anything but a very successful recovery.   Plaintiff simply notes for the record that the amount recovered by any consumer-plaintiff may not be proportionately connected to Plaintiff's attorneys' fee request.[8]  Importantly, Plaintiff further notes that she never demanded any amount, and Trans Union never made any settlement offer, that would even remotely suggest that the $530,000 verdict was not exceptional in enforcing FCRA liability in this matter.

---

[7]     Such an upward adjustment would also be appropriate given the contingency fee risks articulated by Judge Posner.  *See* Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992).

[8]     *See generally Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986) (no proportionality necessary between damages and fee award in fee-shifting case; finding that $245,456.25 fee award was appropriate in case where total damages were $33,350); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996); *see also Oslan v. Law Offices Of Mitchell N. Kay,* 232 F. Supp.2d 436 (E.D. Pa. 2002).

### D. <u>Plaintiff Is Entitled To Post-Judgment Interest</u>

Pursuant to 28 U.S.C. § 1961, since Plaintiff has obtained a money judgment in a civil case recovered in a district court, Plaintiff is entitled to an award of post-judgment interest.  28 U.S.C. § 1961. Per the above-cited statutory provision, this Court should issue an order providing that Plaintiff is entitled to post-judgment interest; that such interest is to be paid by Trans Union, along with the judgment of $530,000, plus reasonable attorney's fees and costs; and that such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  28 U.S.C. § 1961.

### IV. <u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiff's Motion for Judgment in Her Favor, Inclusive of an Award of Attorney's Fees and Expenses, along with Post-Judgment Interest should be granted.  Plaintiff should be awarded attorney's fees in the amount of $136,833.84, costs in the amount of $6,391.34.  The total judgment in Plaintiff's favor, inclusive of the verdict and of reasonable attorneys' fees and costs, should therefore be in the amount of $673,225.18.

Respectfully submitted,
**FRANCIS & MAILMAN, P.C.**


By: */s/ John Soumilas*
   MARK D. MAILMAN
   JOHN SOUMILAS
   GEOFFREY H. BASKERVILLE
   Land Title Building, 19th Floor
   100 South Broad Street
   Philadelphia, PA  19110
Dated: April 9, 2010 (215) 735-8600

22

## <u>CERTIFICATE OF SERVICE</u>

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of the foregoing Plaintiff Camon Dixon-Rollins' Motion for Judgment in her Favor, Inclusive of an Award of Attorneys' Fees and Reimbursement of Costs and Expenses, along with Post-Judgment Interest, from Defendant Trans Union, LLC to be served by way of ECF Notification upon the following individuals:

Bruce S. Luckman, Esquire
Timothy P. Creech, Esquire
Kogan, Trichon & Wertheimer, P.C.
1818 Market Street, 30th Floor
Philadelphia, PA  19103
bluckman@mstkw.com
tcreech@mstkw.com

*Attorneys for Defendant Trans Union, LLC*

**FRANCIS & MAILMAN, P.C.**

  */s John Soumilas*                       
JOHN SOUMILAS
Attorneys for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DATE: April 9, 2010