**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMEN DIXON-ROLLINS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **EXPERIAN INFORMATION SOLUTIONS,** | : | **NO.  09-0646** |
| **INC., et al** | : | |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                              **September 23, 2010**

After a jury verdict in her favor, Carmen Dixon-Rollins ("Dixon-Rollins") seeks attorneys' fees and costs from the defendant, Trans Union, LLC ("Trans Union"), pursuant to the fee shifting provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  Trans Union does not challenge the entitlement to attorneys' fees, but does object to the amount as unreasonable.  It contends that Dixon-Rollins has failed to provide adequate support for Geoffrey Baskerville's hourly rate; has disproportionately allocated to Trans Union attorneys' fees that should be borne equally by all defendants; and has unjustifiably included a fee enhancement.  Trans Union also objects to specific litigation fees and costs and fees for post-trial practice.

After a thorough review of the record, including the time recording sheets maintained by Dixon-Rollins's counsel, we shall award plaintiff $104,852.50 in legal fees and $5,278.71 in costs.[1]

---

[1] In her original motion, Dixon-Rollins sought $136,833.84 in fees and $6,391.34 in costs for the time period beginning at the inception of this litigation through the conclusion of the trial and submission of her fee petition.  Dixon-Rollins has supplemented her request for additional attorneys' fees in the amount of $24,059 and costs in the amount of $424.65 for supplemental post-trial practice.  Thus, plaintiff requests a total of $160,892.84 in attorneys' fees and $6,815.99 in costs.

## Background

Dixon-Rollins sued Trans Union, Experian Information Solutions, Inc. ("Experian"), Associate Credit and Collection Bureau, Inc. ("ACCB") and Chancellor Properties ("Chancellor"), for violations of the FCRA.  The plaintiff settled with Experian on September 8, 2009, and ACCB and Chancellor on February 18, 2010.

On March 4, 2010, a jury trial commenced with Trans Union as the sole remaining defendant.  After a two day trial, a jury found Trans Union liable for violating its duties under the FCRA.  The jury awarded Dixon-Rollins actual damages and punitive damages. Trans Union filed a timely post verdict motion, which we have denied.

Dixon-Rollins has moved to collect attorneys' fees and costs for prevailing in the action against Trans Union and for fees and costs associated with her attorneys' post-trial practice.

## Standard of Review

A prevailing party under the FCRA is entitled to reasonable attorneys' fees and costs.  See 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).  The prevailing party bears the burden of demonstrating that the fee request is reasonable.  *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 543 (E.D. Pa. 2003).  Determining the amount of a reasonable fee requires a two-part analysis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Maldonado*, 256 F.3d at 184; *Sheffer*, 290 F. Supp. 2d at 543.  First, we must review the number of hours to assess whether they were reasonably expended. *Id.*  Second, we must decide whether the attorney's hourly rate is reasonable. *Id.*  Once these two numbers are established, they are multiplied to yield the lodestar, which is presumed to be a reasonable fee. *Rode v.*

2

*Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). After the lodestar is established, the burden then shifts to the adverse party to demonstrate that it is unreasonable. *Id.*

A district court cannot decrease an award based on factors not raised by the adverse party. *Id.* (quoting *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985)). Objections must be specific. *See U.S. v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000); *Scheffer*, 290 F.Supp.2d at 544. Nevertheless, once the adverse party objects to a fee request, we have considerable discretion to "adjust the fee award in light of those objections." *Rode,* 892 F.2d 1177*.*

## Discussion

### Hourly Rate

A reasonable hourly rate is generally calculated according to the prevailing market rate in the community for similar service by lawyers of "reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S 886, 896 n.11 (1984); *Smith v. Phila. Hous. Auth*., 107 F.3d 223, 225 (3d Cir. 1997). The prevailing party bears the burden of establishing that its requested hourly rates are in line with comparable market rates for legal services. *Smith*, 107 F.3d at 225.

Trans Union only disputes Geoffrey Baskerville's rate, arguing that his $340 per hour rate is excessive and unsupported. Trans Union points out that in *Morris & Posner v. I.C. Systems, Inc*., No. 06-2133, 2009 WL 1362594, at *3 (E.D. Pa. May 15, 2009), a consumer protection action decided approximately one year ago, Baskerville's hourly rate was approved at $290 per hour. It argues that Dixon-Rollins has failed to justify a 17 percent increase in the hourly rate in such a short period of time.

In response, Dixon-Rollins submitted the declaration of Patrick Gibbons, an attorney

practicing in Philadelphia, and a list of the consumer protection cases in the Eastern District of Pennsylvania on which Baskerville worked. She contends that Baskerville's hourly rate is justified by his eighteen years of general litigation experience and the increase in his specific experience and skill in handling consumer litigation matters since the *Morris & Posner* case.

Although Baskerville may have gained more consumer protection experience, there is no justification for the rate requested in the fee petition. Even considering his increased experience, we find it unreasonable that his hourly rate grew 17 percent in one year. In determining a reasonable rate, we are guided by the Community Legal Services, Inc. ("CLS") schedule of hourly rates. *See Maldonado*, 256 F.3d at 187 (holding that the attorneys' fee schedule composed by CLS is "a fair reflection of the prevailing market rates in Philadelphia"). The CLS schedule suggests that attorneys with sixteen to twenty years' experience, Baskerville's range, should charge hourly rates between $275 and $315. Taking into consideration his skill as a consumer protection attorney, we find it reasonable to adjust his hourly rate to $315.

<u>Hours Expended</u>

In cases involving multiple parties, the Third Circuit has made clear that a "defendant should not be required to compensate a plaintiff for attorney hours devoted to the case against other defendants." *Rode*, 892 F.2d at 1185 (internal quotations and citations omitted). However, hours expended on claims against dismissed defendants are compensable "if [the] plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against the defendants over whom the plaintiff prevailed." *Id.*

District court's have wide discretion to equitably apportion fees between several

4

defendants. *Jefferson v. City of Camden,* No. 01-4218, 2006 WL 1843178, at *18 (D.N.J June 30, 2006). There are several methods available for apportioning fees. Where there are several defendants that are equally culpable, a court may divide fees equally among those defendants. *Id.* (citing *Swan v. Daniels*, 917 F. Supp. 292, 301 (D. Del. 1995)). In situations where some defendants are more culpable than others, the court may apportion fees according to each defendant's relative culpability. *Id.* (citing *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982)). Courts may also look to the "real source of the offense" and the amount of time spent litigating against each defendant in dividing fees. *Id.* (citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984)).

Trans Union argues that Dixon-Rollins's fee petition disproportionately allocates to Trans Union attorneys' fees for work that is relevant to her claims against all or different defendants. It claims that the fees should be apportioned equally among the defendants remaining in the case at the time of each expenditure. Thus, according to Trans Union, the Court should allocate one-third (1/3) of Francis & Mailman's fees to Trans Union during the period when there were three defendants; one-fourth (1/4) to Trans Union during the period when there were four defendants; and the entire fee (100%) to Trans Union during the period it was the only remaining defendant.

Dixon-Rollins counters that fees incurred exclusively with respect to litigation against other defendants were eliminated. She also argues that she reasonably charged reduced amounts of the remaining common costs to Trans Union because such costs would have been expended had Trans Union been the only defendant.

Although we are mindful that it is not appropriate to "mechanically divide . . . expenses by the number of Defendants present in the case at each stage of the

proceeding," *Scheffer,* 290 F. Supp. 2d at 545, the unique facts and circumstances of this case compel a proportional allocation.   First, unlike *Scheffer*, this is not a case in which the liable defendant is the most culpable.   Here, all four named defendants share an equal amount of blame.   Chancellor is responsible for failing to properly record Dixon-Rollins's settlement payment.   ACCB was negligent in continuing to report the debt outstanding and for failing to properly investigate whether or not the debt had been satisfied.   Experian and Trans Union both continued to report the debt on Dixon-Rollins's credit report despite receiving numerous disputes and failed to conduct reasonable reinvestigations.   Thus, because the defendants are equally culpable, a proportionate allocation of fees is appropriate. *See Swan*, 917 F. Supp. at 301 (court can divide fees based on relative culpability).

Second, Dixon-Rollins has prevailed against each of the defendants.   She reached settlements with Experian, Chancellor and ACCB, and won a jury verdict against Trans Union. *See Jefferson,* 2006 WL 1843178, at *18 (apportioning fees permitted "particularly [where] the absence of other defendants . . . is specifically attributable to settlement").   It is logical to assume that each settlement amount included a sum sufficient to cover attorneys' fees expended through the settlement date.   Therefore, were we to require Trans Union to pay a disproportionate amount of fees, Dixon-Rollins would receive excessive payments.

Finally, Francis & Mailman engages in a form of "block billing" that makes it difficult to determine which fees may be "fairly devoted" to all of the defendants and which fees are

specifically attributable to claims against specific defendants.[2]   Thus, to ensure that the fees are reasonable, Dixon-Rollins's request should be adjusted so that the hours spent are apportioned equally among the defendants present at the time the hours were expended.  Thus, we will allocate one-third (1/3) of Francis & Mailman's fees to Trans Union during the period when there were three defendants; one-fourth (1/4) to Trans Union during the period when there were four defendants; and the entire fee (100%) to Trans Union during the period it was the only remaining defendant.

<u>Disputes with Specific Time Entries</u>

A fee petition should include fairly detailed information for time devoted to various activities. *Rode*, 892 F.2d at 1190.  Although "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted," a fee petition must be specific enough to determine if the hours claimed are unreasonable for the work performed.  *Id.* (citations omitted).   We must "decide whether the hours . . . were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Grp., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433-34). If we cannot determine whether a particular time entry is chargeable to the defendant, it must

---

[2] Block billing is a time keeping method where lawyers record their daily time for various tasks in one entry, rather than using itemized time entries for each separate task.  *U.S. v. NCH Corp.*, No. 05-881, 2010 U.S. Dist. LEXIS 94486, at *19 (D. N.J. Sept. 10, 2010) (citing *Brown v. City of Pittsburgh*, No. 06-393, 2010 WL 2207935, at *8 n.12 (W.D. Pa. May 27, 2010). Here, plaintiff's counsels' use of block billing makes it difficult to determine how to allocate work between the various defendants.  For instance, some time entries specify work attributable to a particular defendant. *See, e.g., Soumilas Time Entries*: March 12, 2009; March 19, 2009; March 26, 2009; and June 8, 2009.  Others seem to indicate that work was done with respect to a single defendant, but do not specify which one.  *Soumilas Time,* September 10, 2009.  Some involve tasks attributable to more than one defendant but do not specify how much time is fairly attributable to each.  *Soumilas Time Entry,* August 21, 2009.  Still others involve work clearly attributed to all defendants. *Soumilas Time Entry,* July 1, 2009.

be excluded because the burden of proof rests with the prevailing party. *Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536, 543-44 (E.D. Pa. 1996) ("where we simply are not certain whether a particular task is chargeable to [the defendant] or not, we have excluded it, because the burden of proof rests squarely with Plaintiffs.").

Trans Union objects to several time entries. First, it objects to 0.4 hours expended by Mark Mailman for "internal email correspondence" on February 18, 2010 and February 25, 2010. These entries are not sufficiently detailed to enable us to determine if the fees are reasonable. *See Rode*, 892 F.3d at 1190. Thus, they will be excluded.

Trans Union next objects to a total of 3.2 hours expended by Geoffrey Baskerville for work related to Maurice Rollins, expert Tomas Norton, and responding to *Daubert* motions.[3] Because Maurice Rollins was barred from testifying at trial, Trans Union should not be responsible for paying such fees. Thus, we exclude Baskerville's entire entry from July 16, 2009, and delete 0.2 hours of his time from February 22, 2010.

It is also appropriate to subtract time for Baskerville's work related to expert testimony because Dixon-Rollins decided not to use an expert witness. Trans Union objects to Baskerville's entries from February 19 and February 23, 2010. Both entries include some work that is excludable because it involves expert testimony and other work that is properly chargeable to Trans Union. However, because Francis & Mailman uses block billing, it is not possible to determine how much of the total time is allocable to each entry. In light of this ambiguity, Trans Union has requested only a small deduction of 0.2 hours from each entry. Because we conclude that Trans Union's estimated deduction for

---

[3] The 3.2 hours were incurred on the following dates: July 16, 2009; December 9, 2009; February 19, 2010; February 22, 2010; February 23, 2010.

time spent on excluded expert testimony is reasonable, we will exclude 0.2 hours from Baskerville's entries on February 19 and February 23, 2010.

Trans Union also requests that we deduct time from Baskerville's entry on December 9, 2009.  As with the disputed February 2010 entries, the December 9, 2010 entry includes some time involving excluded expert evidence and some time involving chargeable tasks.[4]  Also, like the February 2010 entries, the block billing narrative makes it impossible to determine how much time is allocable to the excluded task and how much is allocable to the permitted task.   Without explanation and in contradiction with its treatment of the February 2010 entries, Trans Union has requested that we delete the entire time from this entry.  We assume that Trans Union seeks to exclude this entire entry because the block billing narrative makes it impossible to determine the amount of time spent on tasks other than the excludable expert testimony.

 Block billing is a common time-saving practice and will be upheld if there is a reasonable correlation between the various activities listed in a block and the time spent completing those tasks. *NCH Corp.,* No. 05-881, 2010 U.S. Dist. LEXIS 94486, at *19-20 (D. N.J. Sept. 10, 2010)  (citations omitted); *Schlier v. Rice,* 2009 WL 5182164, at *6 (M.D. Pa. Dec. 22, 2009).  However, it is not the ideal time keeping method and lawyers who use it do so at their "own peril." *Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *7 n.14 (W.D. Pa. Mar. 5, 2010).   If a block entry is confusing or makes it difficult to allocate reasonable time to a specific task, "the blame lies on the party seeking fees

---

[4] The entry states: "Meeting with JS and DMS re: motions for summary judgment and *Daubert* motions; review Tras Union statement of facts; review ACCB statement of facts; review documents supporting facts."

because they were in the best position to mitigate any confusion." *NCH Corp.*, 2010 U.S. Dist. LEXIS 94486, at *25.  In this case, we examine the block entry and approve time reasonably correlated to permissible tasks. *Id.*

Because the December 9, 2009 entry includes some tasks that are reimbursable, it would be inappropriate to delete the entire time.  However, because the block billing narrative makes it difficult to determine or estimate the portion of time allocated to each task, we "split the difference between the parties." *Id*. at *27.  Thus, for the December 9, 2009 entry, we will reduce the chargeable time from 2.30 hours to 1.15 hours.

Trans Union also takes exception to the 1.5 hours expended by Danielle Spang on December 8, 2009.  The block billed entry lists the *Daubert* motion, motion for summary judgment, and other tasks.  Like Baskerville's December 9 entry, Spang's entry does not segregate the time expended on the excluded *Daubert* motion from the chargeable tasks. Because we can not effectively estimate the correct apportionment, we reduce this time by half, from 1.5 hours to 0.75 hours.

We also deem it appropriate to delete Baskerville's time for attending the March 3, 2010, final pretrial conference.  Baskerville's participation was non-existent or minimal at best.   Lead counsel Soumilas was the only active plaintiff's attorney.   Because Baskerville's attendance at the final pretrial conference was unnecessary and duplicative of Soumilas's time, we will delete 2.5 hours from his March 3, 2010 entry.

Finally, we conclude that the attorney hours spent on the initial fee petition are excessive. Francis & Mailman admits that it contemporaneously maintains its time records. It has also filed fee petitions in prior cases and undoubtably recycled its research here.  It is unlikely that the initial fee petition required significant attorney hours.  Moreover,

because a portion of the fee petition was devoted to arguing for unwarranted fee enhancements, it is inappropriate to reimburse Francis & Mailman for that time.  Thus, we reduce attorney hours spent on the initial fee petition by half.[5]

Enhancements

Dixon-Rollins has requested that the lodestar be increased pursuant to certain fee enhancements. There is a strong presumption that the lodestar is reasonable.  *Perdue v. Kenny A. ex. rel. Winn*, 130 S. Ct. 1662, 1673 (2010).  However, that presumption may be overcome in exceptional circumstances in which the lodestar "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*.  Factors may include the quality of the representation, the delay in payment, and the contingent nature of the compensation.

A quality multiplier is applied only in very rare circumstances.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware I)*, 478 U.S. 546, 566 (1986); *Student Pub. Interest Research Grp., Inc. v. AT&T Bell Labs*., 842 F.2d 1436, 1453 (3d Cir. 1988).  An attorney's skill is normally reflected in his or her hourly rate and accounted for in the lodestar. *Cerva v. E.B.R. Enterprises, Inc.,* 740 F. Supp. 1099, 1106 (E.D. Pa. 1990) (citations omitted).  Thus, awarding a quality multiplier creates the risk of double payment. In order to avoid double payment, a quality multiplier will be awarded only if an attorney's performance is "so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence." *Student Pub. Interest,* 842 F.2d at 1453.

---

[5] Soumilas's time entry for March 22, 2010, will be reduced from 1.30 hours to 0.65 hours, and his time entry for April 7, 2010, will be reduced from 3.5 hours to 1.75 hours.  The following time entries for Baskerville will be reduced by half: March 24, 25, 29, 2010; April 5, April 7, 2010.

11

Although Francis & Mailman provided competent services and secured a large award for their client, their work was not so superior to justify a quality multiplier.  The hourly rates charged by Dixon Rollins's attorneys' adequately compensate them for their skills and the results achieved fall within reasonable expectations.  Thus, the fee will not be increased based on the quality of services.

The lodestar may also be enhanced to account for delay.  *Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 655-56 (3d Cir. 1986).  The burden is on the prevailing party to document the need for a delay multiplier by producing evidence that counsel incurred costs as a result of deferred payment of fees. *Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992) (citations omitted).

Dixon-Rollins has failed to demonstrate the need for a delay multiplier. She relies on a bare assertion that "an enhancement of the regular fee of Plaintiff's counsel is appropriate to account for the fact that Plaintiff's counsel still has not received any payment."  This statement ignores the fees that were generated by the settlement with other defendants.  The fees sought in this motion are those associated with the litigation involving Trans Union.  Dixon-Rollins provides no evidence of the specific costs incurred as a result of the delay, such as market interest rates or interest expenses incurred on loans taken out to support the litigation.  *Keenan*, 983 F.3d at 477.  Moreover, the roughly nineteen months between filing the complaint and the award of fees is not significant enough to warrant an enhancement.  *See, e.g., Hall*, 943 F. Supp. at 546 (E.D. Pa. 1996) (refusing to grant delay multiplier where eighteen months elapsed between filing of complaint and award of fees); *Peters v. Del. River Port Auth.*, No. 91-6814, 1993 WL 496675, at *2 (E.D. Pa. Aug. 13, 1993) (refusing to grant delay enhancement where

twenty-three months elapsed). Therefore, a delay multiplier will not be applied.

Finally, contingency multipliers are available only where the risk enhancement would be necessary to attract competent local counsel. The burden is on the prevailing party to justify the enhancement. *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 379 (3d Cir. 1987). To meet this burden, the prevailing party must make "substantial showings of fact, particularly concerning the local contingent fee market." *Cerva*, 740 F. Supp. at 1106. This showing may be made by providing an economic study setting up how hourly rates relate to contingency compensation or provide a comprehensive market-based survey of local fee arrangements. *Blum*, 829 F.2d at 380-81.

Dixon-Rollins has provided nothing to justify a contingency enhancement. Therefore, no enhancement is warranted.

## Costs

Under § 1681o(a)(2) of the FCRA, prevailing parties may be awarded costs. 15 U.S.C. § 1681o(a)(2). Costs must be reasonable, necessary and properly documented. *See Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998).

Trans Union objects to two expenses claimed by Dixon-Rollins's counsel.  First, Trans Union requests that the "Internal Copying and Scanning" costs be reduced by 75 percent, constituting an equal allocation among all four defendants, because plaintiff's counsel did not submit evidence on when the charges were incurred.  Although plaintiff's counsel states that the copying and scanning was "primarily related to pretrial and trial activities," they failed to properly document this claim. Without appropriate documentation, we cannot determine the dates the charges were incurred or the claims to which they are attributable. Therefore, copying costs will be reduced by $1,243.05, from $1,657.40 to

$414.35.

Second, Trans Union objects to $294.23 claimed for "Travel and Lodging for Florida Deps."  Travel and lodging expenses are not reimbursable.  *See Sheffer*, 290 F. Supp. 2d at 551-52.  Instead, they are considered part of the overhead allowance included in the attorney's hourly fee. *Id.* at 552; *see also Polcino v. City of Philadelphia, No.* 89-4672, 1991 WL 124592, at *2 (E.D. Pa. July 3, 1991). Thus, the plaintiff's costs will be reduced by an additional $294.23.

<u>Supplemental Petition for Attorneys' Fees and Costs for Post-Trial Practice</u>

Dixon-Rollins has requested an award of $24,059 in fees and $424.65 in costs in connection with her reply in support of her fee petition and her response to Trans Union's post-trial motion for judgment.  Trans Union counters that several of Francis & Mailman's time entries should be excluded and that the number of hours expended in post-trial practice is unreasonable.

A prevailing party is entitled to recover a reasonable fee for the preparation of post-trial motions.  *See Delaware I*, 478 U.S. 546, 561 (1986) (finding that attorney's fees are reasonable if they are "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation") (quoting *Webb v. Bd. of Ed.*, 471 U.S. 234, 243 (1985)). A prevailing party is also entitled to compensation for time spent litigating the fee petition. *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 54 (3d Cir. 1978); *Jackson on Behalf of Jackson v. Philadelphia*, 858 F.Supp. 464, 477 (E.D.Pa. 1994).

Trans Union first objects to hours billed by Francis & Mailman in preparation of its motion to subpoena the billing records of Trans Union's defense counsel.  Because we rejected Dixon-Rollins's motion (Document No. 110), which was unrelated to any claims

it successfully litigated, we shall reduce the lodestar by the amount of hours chargeable to the motion. *See Rode*, 892 F.2d at 1183 (a court is permitted to reduce fees incurred for unsuccessful claims that are distinct from claims on which the party did succeed). Thus, we shall delete the following entries from Francis & Mailman's supplemental billing record: George Baskerville's entries from April 19 and April 20, 2010, in the amount of 4 hours; and Danielle Spang's entry from April 12, 2010, in the amount of 0.3 hours.  We will also delete one-half of John Soumilas's time from April 12 and April 20, 2010, and one half of Danielle Spang's time from April 20, 2010. These entries include a mix of excluded time spent on the subpoena and permitted tasks which we cannot segregate because of block billing. *NCH Corp.*, 2010 U.S. Dist. LEXIS 94486, at *27.[6]

Trans Union next objects to the number of hours expended by Francis & Mailman in responding to Trans Union's motion for judgment as a matter of law.  After reviewing the supplemental billing record, it appears that Francis & Mailman spent an aggregate of 66 hours responding to Trans Union's post trial motion.[7]  Soumilas, who was primarily responsible for the response, recorded approximately 56.2 hours.  At a billable rate of $315 per hour, Soumilas's time in responding to the motion resulted in $17,703 in legal fees. Trans Union points out that this fee is unreasonable considering approximately thirteen pages of the forty six page response were copied word for word from briefs Francis & Mailman filed in *Cortez v. Trans Union,* 2010 WL 3190882 (3d Cir. 2010) and *Chajekian v. Equifax*, C.A. No. 2:07-2211.

---

[6] We will reduce Soumalis's time from April 12 and April 20, 2010, from 7.70 hours to 3.85 hours, and Spang's time from April 20, 2010, from 1.30 hours to 0.65 hours.

[7] 66 hours is the aggregate of the 56.2 hours chargeable for Soumilas and 9.8 hours chargeable for Spang.

Having closely reviewed plaintiff's response to Trans Union's post verdict motion, we agree that the time spent in responding is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Some portions of the brief are not particularly relevant to the central issues of the case.  Others are verbose and unhelpful.[8]  Moreover, as pointed out by Trans Union, a significant portion of the response uses arguments excised verbatim from briefs filed by Francis & Mailman in other cases.  Because of the excessive nature of Soumilas's time in responding to Trans Union's post-trial motion, the time spent responding to post-trial motions will be reduced from 56.2 hours to 24 hours.

Finally, with respect to Dixon-Rollins's reply in support of her fee petition, we agree with Trans Union that the reply is not entirely responsive or helpful.  Therefore, we find it appropriate to deduct hours spent on the reply.

## Conclusion

In sum, after revising the hourly rate of Geoffrey Baskerville to $315.00 per hour, reducing the number of properly chargeable hours and proportionally allocating time based on the number of defendants involved in the litigation, the adjusted lodestar amount is equal to $104,852.50.[9]  After reducing copying costs by 75 percent and eliminating costs

---

[8] *See, e.g.,* "In a daring move, TU asks this Court to ignore many of the facts of record in the case, to make all inferences in TU's favor (even though the applicable legal standard requires the opposite), and to supplant established FCRA law. *Pl. Resp. Brief* p. 1.  "Showing its disdain for authority within our Circuit, TU cites a single case from another circuit, *Chiang v. Verizon*, 595 F.3d 26 (1st Cir. 2010). *Pl. Resp. Brief* p. 1. "Now, after a jury finding of willfulness in a case involving mere parroting (and worse), TU acts shocked, as if it had no idea that it had to do anything besides copy its source's response." *Pl. Resp. Brief* p. 6.

[9] This number represents the sum of the following charges: Mark Mailman (5.03 hours x $390); John Soumilas (209.24 hours x $315); Geoffrey Baskerville (77.33 hours x $315); Danielle Spang (89.1 hours x $125); Alicia Bungy (9.50 hours x $125); and Caroline Bloss (2.37 hours x $125).

for travel, the recoverable costs incurred by plaintiff's counsel are $5,278.71.[10]   Therefore, we conclude that as the prevailing party, Dixon-Rollins is entitled to $104,852.50 in attorneys' fees and $5,278.71 in costs.

---

[10] This number includes $4,854.06 in costs incurred through trial and $424.65 in costs incurred during post-trial litigation.